UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBRALTER, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DMS FLOWERS, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-00174-CDB <br><br> ORDER GRANTING DEFENDANT DANIEL ANDRADE'S MOTION TO SET ASIDE DEFAULT AND DENYING PLAINTIFFS' MOTION TO COMMENCE DISCOVERY <br><br> (Docs. 31, 37) <br><br> ORDER SETTING SCHEDULING CONFERENCE |

Pending before the Court is: (1) the motion of Plaintiffs Gibralter, LLC and Divinely, Inc. ("Plaintiffs") for leave to seek discovery upon entry of default and prior to Rule 26(f) conference, filed June 27, 2024, and (2) the motion of Defendant Daniel Andrade to "set aside default judgment," filed July 3, 2024. (Docs. 31, 37). Plaintiffs filed an opposition to Defendant Andrade's motion to set aside default judgment and Defendant Andrade replied. (Docs. 41, 43). For the reasons set forth herein, the Court will grant Defendant Andrade's motion to set aside default judgment and deny Plaintiffs' motion for leave to seek discovery upon entry of default and prior to Rule 26(f) conference.

**Background**

Plaintiff Gibralter, LLC ("Gibralter") is the owner of the United States Trademark number 5540108 for standard character mark "BLOOMINGFUL" (hereinafter referred to as "MARK"), issued by the U.S. Patent and Trademark Office on August 14, 2018. (Doc. 1 at ¶ 14 & Exhibit 1). Gibralter

granted Plaintiff Divinely, Inc. ("Divinely"), and its designated affiliates, if any, the sole and exclusive right to use the MARK. *Id*. at ¶ 15. Divinely sells florals under the MARK, nationally and internationally, from a storefront and online. *Id*. at ¶ 16. Divinely has been using the MARK continuously since at least as early as January 1, 2018, throughout the United States and internationally. *Id*. at ¶ 31.

Plaintiffs allege that Defendants began their infringing use of the MARK at least as early as May 16, 2023, when they filed "Bloomingful Flowers, LLC" with the California Secretary of State. *Id*. at ¶ 35. In a "crossclaim" against an entity named Telefora, Defendant Daniel Andrade ("Andrade") alleges that he purchased a business called "All My Love Fresh Flowers" in June 2023. (Doc. 39 at ¶ 8). Upon purchasing the business, Andrade "changed the name to 'Bloomingful' while in escrow." *Id*. at ¶ 9. Plaintiff claims he was unaware that "Bloomingful" was a trademarked name, and he advertised the Grand Opening of his new store through various media, including radio. (Docs. 1 at ¶ 40; 39 at ¶ 9). Andrade claims his business model involves receiving orders from Teleflora, a corporation doing business in Bakersfield. *Id*. at ¶¶ 4, 14. Andrade alleges Teleflora also advertised his business name on the internet. *Id*. at 14.

Andrade claims that around the time of the Grand Opening in June 2023, he "was informed that he could not use the name 'Bloomingful.'" (Doc. 39 at ¶ 10). Andrade acknowledges that Gibralter owns the trademark for "Bloomingful." *Id*. at ¶ 18. Andrade claims he promptly changed the business name to DMS LLC. *Id*. at ¶ 11; *see* (Doc. 1 at ¶ 18) ("As of November 9, 2023, DMS Flowers, LLC is a California Limited Liability Company and on information and belief is the new business name of Bloomingful Flowers LLC…"). Andrade alleges he obtained a new EIN number, opened a new bank account, and registered a new domain name for his business. (Doc. 39 at ¶¶ 12-13).

Plaintiffs allege that on or about September 9, 2023, they became aware of Defendants' infringement of the MARK. (Doc. 1 at ¶ 45). Plaintiffs sent a cease and desist letter to Bloomingful Flowers, LLC, on September 19, 2023. *Id*. at ¶ 46. Plaintiffs assert that on September 22, 2023, Defendant Maria Pantoja ("Pantoja") acknowledged receipt of the letter and assured Plaintiffs that Bloomingful Flowers, LLC and its principals would discontinue the use of the MARK. *Id*. On

2

1  October 12, 2023, Plaintiffs contacted Defendants and again demanded they cease and desist from
2  using the MARK.  *Id*. at ¶ 47.
3        Andrade claims Teleflora was supposed to remove the previous name from their
4  advertisements when informed of the trademark issue.  (Doc. 39 at ¶ 14).  Andrade asserts he
5  "specifically requested that Teleflora make this change around December 12, 2023."  *Id*. at ¶ 16.
6  Andrade claims Teleflora complied with his request around February 24, 2024.  *Id.*
7        On February 6, 2024, Plaintiffs initiated this action with the filing of a complaint against
8  Defendants Andrade, Samantha Andrade, Pantoja, and DMS Flowers, LLC.  (Doc. 1).  Plaintiffs assert
9  claims against Defendants for (1) federal trademark infringement, (2) federal unfair competition, (3)
10 federal trademark dilution, (4) unfair and deceptive trade practices, (5) common law trademark
11 infringement and unfair competition, (6) state trademark dilution and injury to business reputation, and
12 (7) violation of anti-cybersquatting consumer protection act-cyberpiracy.  *Id*. at 1, 9-16.  Plaintiffs
13 allege liability against Defendants Andrade, Samantha Andrade, and Pantoja as owners, business
14 partners, shareholders, members, managers, or holding other positions of authority with Defendant
15 DMS Flowers, LLC.  *Id*. at ¶¶ 19-21.
16       In May 2024, Plaintiffs filed executed proofs of service of summons for all Defendants (*see*
17 Docs. 14-15, 22-23) reflecting that Andrade was personally served on May 22, 2024.  *See* (Doc. 22).
18 Andrade acknowledges he was served on May 22, 2024.  *See* (Doc. 43 at 10) ("I was not personally
19 served the documents by process server until May 22, 2024).
20       On May 25, 2024, Plaintiffs filed a request for entry of default as to Defendants DMS Flowers,
21 LLC, and Maria Pantoja.  (Doc. 24).  The Clerk of the Court entered default against Defendants DMS
22 Flowers, LLC, and Maria Pantoja on May 28, 2024.  (Doc. 25).  On June 13, 2024, Plaintiffs filed a
23 request for entry of default as to Defendants Daniel Andrade, and Samantha Andrade.  (Doc. 27).
24 That same day, the Clerk of the Court entered default against Defendants Daniel Andrade and
25 Samantha Andrade.  (Doc. 29).
26       Andrade claims he received the complaint by mail on June 18, 2024.  (Doc. 43 at 10).  Plaintiff
27 asserts he "did not understand the significance of the 21-day period referenced in the documents."  *Id*.;
28 *see* (Doc. 2) ("[You are Hereby Summoned] and required to serve…an answer to the complaint which

1    is served on you with this summons, within 21 days after service of this summons on you, exclusive of
2    the day of service.  If you fail to do so, judgment by default will be taken against you for the relief
3    demanded in the complaint.").  Andrade claims on June 19, 2024, he began contacting various law
4    offices seeking advice and spoke to several lawyers but did not understand their explanations.  (Doc.
5    43 at 10).  Andrade asserts "[he] believed [he] had more time to respond" and "[a]lthough [he] knew
6    [he] needed to file an answer [he] did not know how to write it."  *Id*.

7          Andrade claims that on June 20, 2024, he "connected" with a paralegal named Amy, who was
8    able to explain the process to him.  *Id*. at 11.  Andrade notes that "[w]ith help from others
9    knowledgeable in writing legal documents, the Answer was completed on June 22, 2024."  *Id*.
10   Thereafter, Andrade learned that he was already in default and sought additional help to write a
11   motion to vacate the default.  *Id*.  Andrade appears to claim his papers were ready to be filed around
12   June 24, 2024, but he was unable to do so because he did not know how to file documents and lacked
13   access to the ECF filing system.  *See id*. ("On June 24, 2024, I sought help to learn how to file the
14   Answer at the courthouse.").

15         On June 27, 2024, Plaintiffs moved for leave to seek discovery upon entry of default and prior
16   to Rule 26(f) conference.  (Doc. 31).  On July 3, 2024, Andrade filed a motion to "set aside default
17   judgment," an answer to Plaintiffs' complaint, and a "crossclaim complaint" against Teleflora, a
18   corporation doing business in Bakersfield, California.  (Docs. 37-39).[1]  On July 15, 2024, Plaintiffs
19   filed an opposition to Andrade's motion to set aside default, and Andrade filed a reply on August 5,
20   2024.  (Docs. 41, 43).

21   **Legal Standard**

22         Andrade asks the Court to set aside a default judgment entered against him.  (Doc. 37).
23   However, Plaintiff has neither moved for nor been awarded a default judgement – as this stage of the

---

[1] Plaintiffs assert Andrade failed "to submit a [d]eclaration under penalty of perjury as to any scarce facts he does allege."  (Doc. 41 at 7).  However, "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."  Fed. R. Civ. P. 11(a). Plaintiffs do not identify any purported requisite rule or statute.  Moreover, the Court notes Andrade addressed this omission by filing a declaration attached to his reply in support of his contentions. (Doc. 43 at 10-11).

4

litigation, the Clerk of the Court has only entered defaults against the Defendants.  (Docs. 25, 29). Thus, the Court shall address Andrade's request under Federal Rule of Civil Procedure 55(c).

      A clerk's entry of default may be set aside for "good cause."  Fed. R. Civ. P. 55(c).  "To determine 'good cause,' a court must 'consider three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle* (hereinafter, "*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010).  Although the "good cause" standard is the same that applies to motions to set aside default judgment under Rule 60(b), "the test is more liberally applied in the Rule 55(c) context." *Id*. at 1091 n.1 (internal quotations and citations omitted); *see Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) (finding the district court's discretion is "especially broad" when setting aside entry of default, rather than default judgment).

      "[D]efault judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits."  *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974); *see Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.").

**Discussion**

    1.  Culpable Conduct

      "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."  *Mesle*, 615 F.3d at 1092 (emphasis in original) (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds as stated in Delgado v. Dempsey's Adult Care Homes, LLC*, No. 22-15176, 2023 WL 3034263, at *1 (9th Cir. Apr. 21, 2023)).  "Intentional" conduct in this sense means "willful, deliberate, or…[in] bad faith," rather than neglectful. *TCI Grp.*, 244 F.3d at 697-98.  A "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional.'"  *Id*. at 697.

Andrade argues his failure to timely respond to the complaint was not willful, deliberate, or in bad faith. (Doc. 43 at 5). Instead, Andrade claims he was not properly served with the summons and complaint and lacked notice of the lawsuit. *Id*. at 6, 8. Andrade argues that service of process was defective because he "was not aware of the lawsuit until after the default judgment [*sic*] was entered, indicating that proper service may not have been affected [*sic*]." *Id*. at 8. He further claims he "did not receive any notice of the lawsuit or the impending default judgment [*sic*] in a timely manner." *Id*. Andrade asserts this defective service and lack of notice constitutes excusable neglect. *Id*. at 6. Further, Andrade argues that upon learning of the default, he acted promptly to address the matter. *Id*.

The Court finds Andrade's contentions are without merit. Andrade admits he was personally served with the documents on May 22, 2024. *Id*. at 10. Thus, service of the summons and complaint was properly effectuated and Andrade had notice of the lawsuit. The Court finds that Andrade was solely responsible for the delay. Indeed, the record demonstrates that for almost a month, Andrade, with notice of the complaint as of May 22, 2024, seemingly took no action to timely respond. *Id*. Thereafter, Andrade continued to delay his response for two weeks in an effort to obtain legal assistance and counsel. *Id*.

Andrade's response to Plaintiffs' complaint and his separate motion to set aside default were not filed until several weeks after default was entered. Despite this delay, the Court cannot conclude based on the record that such a delay was willful or in bad faith. It appears when Andrade learned that a default had been entered against him (*id*. at 10-11), he promptly took action to set aside the default. *See Falk*, 739 F.2d at 464 (declining to find five-month delay in moving to set aside default culpable in light of the defendant's difficulty in obtaining assistance from legal services); *Williams v. Dawley*, No. 09-799 FCD-EFB, 2008 WL 3540360, at *2 (E.D. Cal. Aug. 12, 2008) (holding parties' diligence in working to set aside default supported a finding of good cause).

Plaintiffs contend Andrade's "allegation of prompt action is just not true." (Doc. 41 at 16). In support, Plaintiffs focus on Andrade's failure to stop using the MARK, even after he knew he could not use the name and was warned by Plaintiffs of his alleged infringement. *Id*. at 17-18. The Court finds Plaintiffs' arguments unpersuasive. Plaintiffs highlight that Andrade purportedly had notice of an impending lawsuit, but the relevant inquiry when entertaining a motion to set aside default is

whether Plaintiff intentionally failed to answer when he had notice of the actual lawsuit. The parties agree that Andrade was served with the complaint on May 22, 2024, and as discussed above, Andrade attempted to set aside the default within weeks of being formally served.

Additionally, the Court notes that while delayed, Andrade has appeared in this action and has displayed a willingness to cooperate fully going forward. (Doc. 43 at 9, 11). Accordingly, the Court finds that this factor weighs in favor of setting aside the entry of default.

2. Meritorious Defense

In order to have an entry of default set aside, a defendant must also present specific facts that would constitute a meritorious defense. *TCI Grp.*, 244 F.3d at 700. However, the burden on defendant is not extraordinarily heavy. *Id*. Indeed, a defense is considered meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Haw. v. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("*Stone*"); *see Audio Toys, Inc. v. Smart AV Pty Ltd.*, No. CV 06-6298-SBA, 2007 WL 1655793, at *3 (N.D. Cal. June 7, 2007) (movant "need only assert a factual or legal basis that is sufficient to raise a particular defense; the question of whether a particular factual allegation is true is resolved at a later stage.") (citing *TCI Grp.*, 244 F.3d at 700).

Andrade claims he has meritorious defenses to Plaintiff's claims. *Id*. at 6. Specifically, Andrade asserts "[a]s outlined in Defendant's proposed Answer, [he] denies the allegations of trademark infringement and asserts valid defenses including lack of confusion, abandonment of trademark by Plaintiffs, and other affirmative defenses." *Id*. at 6-7; (Doc. 43 at 5-9). *Cf.* (Doc. 1 ¶ 12, alleging consumer confusion) *with* (Doc. 37 ¶ 12, denying consumer confusion). Defendant Andrade's answer denies the allegations of Plaintiff's complaint and contains the following affirmative defenses:

> (1) no cause of action stated, (2) laches, (3) estoppel, (4) waiver, (5) failure to mitigate, (6) punitive damages unwarranted, (7) offset, (8) good faith, (9) undiscovered affirmative defense, (10) non-economic general damages, (11) statute of limitations, (12) conduct was justified, (13) no causation, (14) standing, (15) failure of consideration, (16) innocent misrepresentation, (17) due care, (18) lack of damages, and (19) no contractual fraud.

(Doc. 38).

In response, Plaintiffs argue that by virtue of Andrade's allegations in his cross-complaint against Teleflora, he has admitted to Plaintiffs' ownership of the MARK and his infringement. (Doc. 41 at 12).

Whether the parties' goods and services present a likelihood of consumer confusion represents a quintessential fact issue that rarely is amenable to judgment as a matter of law without the benefit of discovery. *E.g.*, *Yaros v. Kimberly Clark Corp.*, No. 17cv1159-GPC(BGS), 2018 WL 3729520, at *5 (S.D. Cal. Aug. 6, 2018); *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cnty.*, No. CV F 09-1988 LJO SMS, 2010 WL 2218813, at *10 & n.3 (E.D. Cal. June 1, 2010). Given the low burden a party must satisfy to demonstrate entitlement to setting aside default (*Stone*, 794 F.2d at 513) and given Andrade's defense in part of lack of consumer confusion, the Court finds that this factor weighs in favor of setting aside the entry of default.

3. Prejudice

"To be prejudicial, the setting aside of an entry of default must result in greater harm than simply delaying the resolution of the case." *TCI Grp.*, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at 463); *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996). "Merely being forced to litigate on the merits cannot be considered prejudicial" for purposes of setting aside the default. *TCI Grp.*, 244 F.3d at 701. Rather, the standard is "whether [a plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463; *see Thompson*, 95 F.3d at 433-34 (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion").

Andrade argues that setting aside his default will not prejudice Plaintiffs as the case is in its early stages and Plaintiffs will not be unduly burdened by litigating the matter on its merits. (Doc. 43 at 7). In response, Plaintiffs contend continued litigation would prejudice it and would also consume valuable court resources when Andrade "has admitted the essential elements of the Complaint." (Doc. 41 at 14). Plaintiffs argue Andrade is "trying to infringe upon the Plaintiffs' right to have a default against the Defendant and have this case much closer to a final resolution and much closer to an injunction to stop the current and continuing infringing use." *Id*. Plaintiffs conclude they are prejudiced because they will have to "spend time, spend money, and be subjected to the continued

infringement when there is no obvious likelihood of being able to collect on a judgment and/or likelihood the Defendant will respect the rights of the parties or the Orders of the Court." *Id*. at 16.

Prejudice such as loss of a "quick victory" is insufficient to justify denial of relief. *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1225 (9th Cir. 2000). "Having to try a case on the merits is not by itself sufficient prejudice" - the delay must result in tangible harm, such as loss of evidence or more difficult discovery. *Audio Toys*, 2007 WL 1655793, at *3. While the Court acknowledges Plaintiffs' allegation there is a current and continuing infringement of its MARK resulting in prejudice (Doc. 41 at 16), as set forth above, determining the existence of a likelihood of consumer confusion invariably requires discovery and development of the factual record – a reality Plaintiffs appear to concede in seeking to delay moving for default judgment and, instead, to engage in discovery. *See* (Docs. 31, 34). In sum, the Court finds that this factor weighs in favor of setting aside the entry of default.

\*     \*     \*     \*     \*

On balance, given the disfavor generally accorded to resolving actions on default and given that the *Mesle* factors weigh in Andrade's favor, the Court finds that default should be set aside. Further, Plaintiffs' motion to commence discovery (Doc. 31) will be mooted once the parties appear for scheduling conference and the Court enters its scheduling order.

The Court acknowledges Andrade's attempt to join non-party Teleflora to this action by way of his "cross complaint" asserting various causes of action against Teleflora generally relating to Plaintiffs' trademark infringement allegations. *See* (Doc. 39). However, Teleflora is not currently a party to this action. Joinder of parties is governed by Rule 19 and 20 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 13(h). Plaintiffs and Andrade will be directed to meet/confer in connection with their preparation of a joint scheduling report (*see* Doc. 3 at 2) and address in that report their respective views concerning whether Teleflora must be or should be added to the action.

**Conclusion and Order**

For the forgoing reasons, it is HEREBY ORDERED that Defendant Daniel Andrade's motion to set aside default (Doc. 37) is GRANTED and Plaintiffs' motion to conduct discovery (Doc. 31) is DENIED.

It is FURTHER ORDERED that the case is set for scheduling conference on November 21, 2024, at 10:00am.  The parties shall appear at the conference remotely via Zoom video conference, and the parties may obtain the Zoom ID and password from the Courtroom Deputy prior to the conference.  A joint scheduling conference statement shall be filed in compliance with the procedures set forth in the Order Setting Mandatory Scheduling Conference (*see* Docs. 3 & 3-2) except that said report also shall be emailed to Courtroom Deputy Clerk Cori Boren (cboren@caed.uscourts.gov).  The parties SHALL address in the joint report their respective views concerning whether Teleflora must be or should be added to the action.  *See* Fed. R. Civ. P. 19, 20.

IT IS SO ORDERED.

Dated:   **October 15, 2024**                         _____
                                                                                        UNITED STATES MAGISTRATE JUDGE