UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBRALTER, LLC, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DMS FLOWERS, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:24-cv-00174-KES-CDB<br><br>ORDER GRANTING DEFENDANTS DMS FLOWERS, LLC, MARIA PANTOJA, AND SAMANTHA ANDRADE'S MOTION TO SET ASIDE DEFAULTS<br><br>(Doc. 83)<br><br>ORDER TERMINATING AS MOOT PLAINTIFFS' MOTONS FOR DEFAULT JUDGMENT<br><br>(Docs. 52, 54, 56) |

Pending before the Court is: (1) the motion of Defendants DMS Flowers, LLC, Maria Pantoja, and Samantha Andrade (collectively, "Defendants") to "set aside default and default judgment," filed on January 21, 2025 (Doc. 83); and (2) the motions of Plaintiffs Gibralter, LLC and Divinely, Inc. (collectively, "Plaintiffs") for default judgment against Defendants Maria Pantoja, DMS Flowers, LLC, and Samantha Andrade, filed on November 8, 2024 (Docs. 52, 54, 56). Plaintiffs filed an opposition to Defendants' motion to set aside default on February 4, 2025 (Doc. 86), and Defendants replied on February 13, 2025 (Doc. 88).

///

///

## I. Relevant Background

On February 6, 2024, Plaintiffs initiated this action with the filing of a complaint in which they seek relief for trademark infringement and related claims under 15 U.S. C. §§ 1501 *et seq.* ("Lanham Act") and state law. (Doc. 1). Plaintiffs' claims are based on allegations that Defendants DMS Flowers, LLC ("DMS"), Daniel Andrade, Maria Pantoja, and Samantha Andrade unlawfully infringed Plaintiffs' registered trademark "Bloomingful" (the "MARK"). (Doc. 68 at 2).

In May 2024, Plaintiffs filed executed proofs of service of summons for all Defendants, reflecting that Maria Pantoja and DMS Flowers, LLC were personally served on May 3, 2024, and that Daniel Andrade and Samantha Andrade were personally served on May 22, 2024. *See* (Docs. 14-15, 22-23). On May 25, 2024, Plaintiffs filed a request for entry of default as to Defendants DMS Flowers, LLC, and Maria Pantoja. (Doc. 24). The Clerk of the Court entered default against these Defendants on May 28, 2024. (Doc. 25). On June 13, 2024, Plaintiffs filed a request for entry of default as to Defendants Daniel Andrade and Samantha Andrade and that same day, the Clerk of the Court entered default against them. (Docs. 27, 29).

On June 14, 2024, the Court ordered Plaintiffs to file motions for default judgment as to all defaulting Defendants within 30 days of entry of the Court's order. (Doc. 30). Plaintiffs filed a motion for leave to take discovery upon entry of default and prior to any Rule 26(f) conference on June 27, 2024. (Doc. 31). On July 2, 2024, the Court granted in part Plaintiffs' *ex parte* motion for order to continue time to seek default judgment. (Doc. 36).

On July 3, 2024, Defendant Daniel Andrade filed a motion to "set aside default judgment," an answer to Plaintiffs' complaint, and asserted a "crossclaim" against Teleflora,[1] a corporation doing business in Bakersfield, California. *See* (Docs. 37-39). On October 15, 2024, the Court granted Defendant Daniel Andrade's motion to set aside default and denied Plaintiffs' motion to commence discovery. (Doc. 44). In that order, the Court provided that "[o]n balance, given the disfavor generally accorded to resolving actions on default and given that the *Mesle* factors weigh in [Defendant Daniel] Andrade's favor, the Court finds that default should be set aside." (*Id.* at 9). On

---

[1] On December 30, 2024, the Court granted the parties' construed motion for joinder of putative Defendant/Cross-Defendant Teleflora. (Doc. 78).

November 6, 2024, the Court denied Plaintiffs' renewed *ex parte* motion to continue time to file default judgment and motion for leave to seek discovery upon entry of default and prior to the Rule 26(f) conference. (Doc. 51). Plaintiffs thereafter filed on November 8, 2024, the pending motions for default judgment against Defendants Maria Pantoja, DMS Flowers, LLC, and Samantha Andrade. (Docs. 52, 54, 56).

On November 21, 2024, the Court convened for scheduling conference with Plaintiffs' counsel and Defendants Daniel Andrade, Samantha Andrade, and Maria Pantoja present (Doc. 65) and entered the scheduling order the following day (Doc. 68). On January 21, 2025, the remaining defaulting Defendants (Samantha Andrade, DMS Flowers, LLC, and Maria Pantoja) filed the pending motion to set aside default. (Doc. 83). The Court now turns to the pending motions.

## II. Governing Authority

Defendants ask the Court to set aside the "defaults and default judgments entered against them[.]" (Doc. 83 at 1-2). However, though Plaintiffs have filed for default judgments against them (Docs. 52, 54, 56), Plaintiffs have not been awarded a default judgment; at this stage of the litigation, the Clerk of the Court has only entered defaults against Defendants. (Docs. 25, 29). Thus, the Court shall address Defendants' request under Federal Rule of Civil Procedure 55(c).

A clerk's entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). "To determine 'good cause,' a court must 'consider three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle* (hereinafter, "*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010). Although the "good cause" standard is the same that applies to motions to set aside default judgment under Rule 60(b), "the test is more liberally applied in the Rule 55(c) context." *Id.* at 1091 n.1 (internal quotations and citations omitted); *see Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) (finding the district court's discretion is "especially broad" when setting aside entry of default, rather than default judgment).

"[D]efault judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974); *see Falk v.*

3

*Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.").

### III.   Discussion

The Court addresses the *Mesle* factors below.[2]

### A.   Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (emphasis in original) (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds as stated in Delgado v. Dempsey's Adult Care Homes, LLC*, No. 22-15176, 2023 WL 3034263, at *1 (9th Cir. Apr. 21, 2023)). "Intentional" conduct in this sense means "willful, deliberate, or…[in] bad faith," rather than neglectful. *TCI Grp.*, 244 F.3d at 697-98. A "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional.'" (*Id.* at 697).

Defendants contend there "is no indication [they] acted in bad faith or were culpable" as they "relied on non-lawyers to navigate themselves through the initial phases of this lawsuit." (Doc. 83 at 13). Defendants argue that once they "were made aware that they needed a lawyer to assist them in resolving this dispute, they retained counsel and are attempting to make it right as quickly as possible." (*Id.*). Defendants contend they "took the lead of fellow Defendant Daniel Andrade … [w]hen he learned that a default had been entered against him" and that they "erroneously believed that [Daniel Andrade's] motion to set aside the default … was for each of the [D]efendants." (*Id.*). Defendants contend another circumstance that delayed them from moving to set aside the default was that Daniel Andrade "hired the services of non-lawyers to draft the motion to set aside the default … which contributed to the fact that the motion only addressed his default … and not the defaults … entered against the other Defendants." (*Id.* at 14). Defendants contend that when the Court granted

---

[2] Plaintiffs point out that Defendants inadvertently make reference to "Zeng," an unnamed party in this action, throughout the "Legal Standard" section of their motion. *See* (Doc. 83 at 9); (Doc. 86 at 9, n.3). The Court disregards this error in consideration of the motion.

4

Daniel Andrade's motion to set aside the default only as to him, they became aware that the defaults had not been set aside against them. (*Id.*). Defendants argue that as the Court noted, they "have appeared at Court hearings, despite the fact that procedurally they have not properly appeared in the action, which should display their willingness to cooperate fully going forward once they are properly in the action." (*Id.*).

In its earlier order setting aside Daniel Andrade's default, the Court found that he "was solely responsible for the delay" given he was properly served, had notice of the lawsuit, and delayed his response in an effort to obtain legal assistance and counsel. (Doc. 44 at 6). However, the Court found that "[d]espite this delay, the Court cannot conclude based on the record that such a delay was willful or in bad faith" as "[i]t appears when [Daniel] Andrade learned that a default had been entered against him …, he properly took action to set aside the default." (*Id.*) (citing *Falk*, 739 F.2d at 464 (declining to find five-month delay in moving to set aside default culpable in light of the defendant's difficulty in obtaining assistance from legal services) & *Williams v. Dawley*, No. 09-799 FCD-EFB, 2008 WL 3540360, at *2 (E.D. Cal. Aug. 12, 2008) (holding parties' diligence in working to set aside default supported a finding of good cause)). The Court further found that "while delayed, [he] has appeared in this action and has displayed a willingness to cooperate fully going forward" and thus the Court found "this factor weighs in favor of setting aside the entry of default." (*Id.* at 7).

Here, the Court similarly finds based on the record that Defendants' delay cannot be deemed willful or in bad faith. Given the circumstances, the Court finds that Defendants' reliance on Defendant Daniel Andrade's lead—in responding to the defaults and his failure to include Defendants in his motion to set aside the defaults—is the result of excusable neglect. Further, Defendants, while unrepresented at the time, appeared in this action at the scheduling conference and have displayed a willingness to cooperate fully going forward. (Doc. 65). Accordingly, the Court finds this factor weighs in favor of setting aside the entry of default.

### B. Meritorious Defense

In order to have an entry of default set aside, a defendant must also present specific facts that would constitute a meritorious defense. *TCI Grp.*, 244 F.3d at 700. However, the burden on a defendant is not extraordinarily heavy. (*Id.*). Indeed, a defense is considered meritorious if "there is

some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Haw. v. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("*Stone*"); *see Audio Toys, Inc. v. Smart AV Pty Ltd.*, No. CV 06-6298-SBA, 2007 WL 1655793, at *3 (N.D. Cal. June 7, 2007) (movant "need only assert a factual or legal basis that is sufficient to raise a particular defense; the question of whether a particular factual allegation is true is resolved at a later stage.") (citing *TCI Grp.*, 244 F.3d at 700).

Defendants contend they have "valid defenses to Plaintiffs' claims" which "are shared by the co-defendants … demonstrating that there is a strong likelihood that the outcome at trial will be contrary to the default … here." (Doc. 83 at 12). Specifically, Defendants assert "[a]s outlined in Defendants' proposed Answer, … [they] deny the allegations of trademark infringement and assert[] valid defenses including lack of dilution and other affirmative defenses." (*Id.*). *Cf.* (Doc. 1 ¶¶ 12-13, alleging, *inter alia,* consumer confusion and dilution) *with* (Doc. 83-1, Defendants' First Amended Proposed Answer ("Ex. A") ¶¶ 11-12, denying consumer confusion and dilution). Defendants' First Amended Proposed Answer denies the allegations of Plaintiffs' complaint and contains the following affirmative defenses:

> (1) failure to state a claim, (2) waiver, estoppel, unclean hands, and/or laches, (3) absence of irreparable harm, (4) inequitable relief, (5) innocent infringement, (6) fair use, (7) no damages, (8) exemplary/enhanced damages unwarranted, (9) offset, (10) good faith, (11) undiscovered affirmative defense, (12) non-economic general damages, (13) conduct was justified, (14) no causation, (15) standing, (16) innocent misrepresentation, (17) due care, and (18) reservation of additional defenses.

(Ex. A).

In response, Plaintiffs argue that by virtue of Defendants' "allegations in his Cross-Complaint[,] Defendants have admitted to the ownership of the MARK and his infringement on the MARK[.]". (Doc. 86 at 21) (making reference to the cross-complaint).

Whether the parties' goods and services present a likelihood of consumer confusion represents a quintessential fact issue that rarely is amenable to judgment as a matter of law without the benefit of discovery. *E.g.*, *Yaros v. Kimberly Clark Corp.*, No. 17cv1159-GPC(BGS), 2018 WL 3729520, at *5 (S.D. Cal. Aug. 6, 2018); *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cnty.*, No. CV F 09-1988 LJO SMS, 2010 WL 2218813, at *10 & n.3 (E.D. Cal. June 1,

1  2010).  Given the low burden a party must satisfy to demonstrate entitlement to setting aside default
2  (*Stone*, 794 F.2d at 513) and given Defendants' defense in part of lack of consumer confusion, the
3  Court finds that this factor weighs in favor of setting aside the entry of default.

4      **C.**    **Prejudice**

5  "To be prejudicial, the setting aside of an entry of default must result in greater harm than
6  simply delaying the resolution of the case."  *TCI Grp.*, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at
7  463); *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996).  "Merely being forced
8  to litigate on the merits cannot be considered prejudicial" for purposes of setting aside the default.
9  *TCI Grp.*, 244 F.3d at 701.  Rather, the standard is "whether [a plaintiff's] ability to pursue his claim
10 will be hindered."  *Falk*, 739 F.2d at 463; *see Thompson*, 95 F.3d at 433-34 (to be considered
11 prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of
12 discovery, or greater opportunity for fraud or collusion").

13 Defendants ague that Plaintiffs "will incur no prejudice if the defaults … are vacated."  (Doc.
14 83 at 11).  Defendants contend Plaintiffs' claims remain active against Defendant Daniel Andrade and
15 thus "litigating this mater on the merits as to the moving Defendants is not prejudicial."  (*Id.*).
16 Defendants contend they "share common defenses of non-infringement, no unfair competition, no
17 unfair and deceptive trade practices, and no cybersquatting/cyberpiracy[.]"  (*Id.*).  Defendants further
18 contend that "there is no evidence in the record that vacating the default will lead to any loss of
19 evidence, onerous discovery, or fraud or collusion[.]"  (*Id.*).

20 In response, Plaintiffs contend continued litigation would prejudice it and would also consume
21 valuable court resources when Defendants "have already admitted the essential elements of the
22 Complaint[.]"  (Doc. 86 at 14).  Plaintiffs contend they would be prejudiced if the defaults are set
23 aside because "the time to engage in discovery against [Defendants is] significantly diminished" and
24 that "Plaintiffs' attorney will be on maternity leave from February 7, 2025[,] until end of May, 2025."
25 (*Id.*).  Plaintiffs contend they have "undertaken significant attorney fees and costs in this matter in
26 relation to the obtainment of defaults … for which they would not have needed to do so had
27 Defendants acted within a reasonable amount of time."  (*Id.*).

28

Prejudice in the form of a "quick victory" is insufficient to justify denial of relief. *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1225 (9th Cir. 2000). "Having to try a case on the merits is not by itself sufficient prejudice" - the delay must result in tangible harm, such as loss of evidence or more difficult discovery. *Audio Toys*, 2007 WL 1655793, at *3. While the Court acknowledges Plaintiffs' allegation that the time to engage in discovery may be affected, the Court notes that fact discovery is open until August 18, 2025—for almost five months from the date of this order. Should the parties require additional time, the parties are welcome to meet and confer to discuss filing a joint stipulated request for an extension of the current case management dates. In sum, the Court finds that this factor weighs in favor of setting aside the entry of default.

\*     \*     \*     \*     \*

On balance, given the disfavor generally accorded to resolving actions on default and given that the *Mesle* factors weigh in Defendants' favor, the Court finds that default should be set aside. As such, Plaintiffs' motions for default judgment (Docs. 52, 54, 56) will be terminated as moot.

### IV. Conclusion and Order

For the forgoing reasons, it is **HEREBY ORDERED** that:

1. The motion of Defendants Maria Pantoja, Samantha Andrade, and DMS Flowers, LLC to set aside default (Doc. 83) is **GRANTED**; and
2. The Clerk of the Court is directed to **TERMINATE** Plaintiffs' motions for default judgment (Docs. 52, 54, 56) as moot.

IT IS SO ORDERED.

Dated:   **March 24, 2025**

UNITED STATES MAGISTRATE JUDGE