1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

GIBRALTER, LLC, *et al.*,

Case No. 1:24-cv-00174-CDB

12

Plaintiffs,

ORDER GRANTING CROSS-DEFENDANT
TELEFLORA, LLC'S UNOPPOSED REQUEST
FOR JUDICIAL NOTICE

13

v.

14

DMS FLOWERS, LLC, *et al.*,

(Doc. 106-2)

15

Defendants.

16
17
18

ORDER GRANTING CROSS-DEFENDANT
TELEFLORA, LLC'S MOTION TO DISMISS
THE FIRST AMENDED CROSS-COMPLAINT
WITH LEAVE TO AMEND CERTAIN
CLAIMS

19

(Doc. 106)

20

Pending before the Court[1] is the motion of Defendant/Cross-Defendant Teleflora, LLC

21

("Teleflora") to dismiss the first amended cross-complaint ("FACC") of Defendants Daniel

22

Andrade ("Andrade"), Samantha Andrade, DMS Flowers, LLC, and Maria Pantoja (collectively,

23

the "DMS Flowers Defendants") and request therein for judicial notice, filed on May 23, 2025.

24

(Docs. 106, 106-2).  On June 6, 2025, DMS Flowers Defendants filed an opposition to the motion

25

to dismiss, and on June 16, 2025, Teleflora filed a reply.  (Docs. 110, 113).  A hearing on the motion

26
27
28

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on May 22, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 105).

1   was held on the record on June 27, 2025.  (Doc. 117).  For the reasons set forth herein, the Court

2   will grant Teleflora's motion to dismiss the FACC with leave to amend certain claims.

3   **I.    Background**

4           **A.    Procedural History**

5           On February 6, 2024, Plaintiffs Gibralter, LLC ("Gibralter"), and Divinely, Inc.

6   ("Divinely") ("Plaintiffs"), initiated this action with the filing of a complaint against the DMS

7   Flowers Defendants.  (Doc. 1).  In his answer to Plaintiffs' complaint (filed while appearing pro

8   se), Andrade asserted a "crossclaim complaint" against Teleflora, a corporation doing business in

9   Bakersfield, California.  (Docs. 38, 39).

10          The scheduling of the case was complicated and significantly delayed given the entry of

11  defaults against certain Defendants, their pro se status (initially), and the litigation of motions for

12  default judgment and to set aside defaults.  Following a scheduling conference at which the DMS

13  Flowers Defendants appeared pro se, on November 22, 2024, the Court entered the operative

14  scheduling order (*see* Doc. 68), and in the months that followed, the DMS Flowers Defendants

15  retained counsel and successfully litigated the setting aside of defaults (*see* Docs. 44, 89).

16          On December 30, 2024, the Court granted the parties' construed joint motion for joinder of

17  putative Defendant/Cross-Defendant Teleflora under either Rule 19(a)(1)(A) and (B) as a required

18  party or under Rule 20(a)(2) as a permissive party.  (Doc. 78).  On March 24, 2025, the Court

19  granted the parties' unopposed motions to amend the complaint and to amend the crossclaim.  (Doc.

20  90).  On March 25, 2025, Andrade filed the operative FACC and on March 27, 2025, Plaintiffs

21  filed the operative, first amended complaint ("FAC").  (Docs. 92, 93).  On May 15, 2025, the DMS

22  Flowers Defendants filed an answer to the first amended complaint.  (Doc. 99).

23          **B.    Factual Background of First Amended Cross-Complaint**

24          In the FACC, DMS Flowers Defendants allege that they are in the business of selling

25  flowers online and that in June 2023, Defendant Daniel Andrade purchased a business called ""All

26  My Love Fresh Flowers."  (Doc. 92 ¶¶ 12, 13).  DMS Flowers Defendants allege that Andrade

27  inadvertently erred in changing the business name to "Bloomingful Flowers" as he was unaware it

28  was a trademarked name owned by Plaintiff Gibralter, LLC.  *Id.* ¶¶ 14, 23.  Andrade advertised the

grand opening of the business through various media, including radio. *Id.* ¶ 14. Around the time of the grand opening in June 2023, Andrade was informed that he could not use the name "Bloomingful Flowers", and he promptly changed the business name to DMS Flowers, LLC. *Id.* ¶¶ 15, 16. Thereafter, Andrade obtained a new EIN number, opened a new bank account, and registered a new domain name for the business name "DMS Flowers, LLC." *Id.* ¶¶ 17, 18.

DMS Flowers Defendants allege that Andrade's business model involves receiving orders from Teleflora, who advertised DMS Flowers LLC online. *Id.* ¶ 19. DMS Flowers Defendants allege that Teleflora was supposed to remove the previous name, "Bloomingful Flowers LLC," from their advertisements when they informed Teleflora of the trademark infringement issue. *Id.* DMS Flowers Defendants allege that Andrade specifically requested Teleflora make this change on December 12, 2023, and that Andrade was informed and believes that Teleflora complied with his request on February 24, 2024, however, by that time, the DMS Flowers Defendants were facing an infringement lawsuit brought by Plaintiff Gibralter. *Id.* ¶¶ 20, 21. DMS Flowers Defendants allege that they were damaged due to Teleflora's delay in removing and replacing the trademarked name, which resulted in Gibralter's infringement claims against them. *Id.* ¶ 22. DMS Flowers Defendants allege that per the written agreement between DMS Flowers, LLC and Teleflora, Teleflora was obligated to correctly advertise Andrade's business name in exchange for a monthly fee of $500 plus a percentage of profits earned by DMS Flowers, LLC. *Id.* ¶ 24. DMS Flowers Defendants allege that Andrade had no intention of infringing on Gibralter's trademark and made reasonable efforts to rectify the error as soon as he was made aware of the error. *Id.* ¶ 25. DMS Flowers Defendants allege that unbeknownst to Andrade, Teleflora did not remove the "Bloomingful Flowers LLC" trademark from Andrade's advertisements for more than two months after he had made the requested change. *Id.* ¶ 26.

DMS Flowers Defendants allege that Teleflora's delay in changing the name breaches the covenant of good faith and fair dealing, which required that Teleflora "would do nothing that would injure" Andrade's right to receive the benefits of the contract. *Id.* ¶ 27. DMS Flowers Defendants further allege that Teleflora's delay is the proximate cause for Gibralter's claim against DMS

1    Flowers Defendants for continued infringement of the "Bloomingful Flowers" mark and DMS

2    Flowers Defendants' damages. *Id.* ¶ 28.

3        In Claim 1, DMS Flowers Defendants assert Teleflora entered into a contract with Andrade

4    to advertise his business accurately and included therein "specific obligations" on Teleflora to

5    ensure that all promotional materials, including online advertisements, reflected the correct and

6    legal business name of Andrade's business.  They further allege that Teleflora was contractually

7    obligated to "promptly update and correct any business information upon his request and ensure

8    compliance with trademark laws to prevent legal issues arising from the use of an infringing

9    business name." *Id.* ¶¶ 29, 30.  The FACC asserts that Teleflora breached these "stipulated"

10   contractual obligations by failing to update the business name following Andrade's notification to

11   Teleflora on December 12, 2023, and Teleflora's delay in doing so until February 24, 2024. *Id.* ¶¶

12   30, 32-33.  The FACC further asserts Teleflora's continued advertisement of the infringing name

13   led to Gibralter's lawsuit against DMS Flowers Defendants and damages related thereto. *Id.* ¶¶ 36-

14   39.

15       Claim 2 of the FACC asserts a claim for breach of the implied covenant of good faith and

16   fair dealing against Teleflora for failing to promptly remove the infringing name and exposing

17   DMS Flowers Defendants to the risk of legal action and harm to their business interests. *Id.* ¶¶ 40-

18   43.

19       Claim 3 of the FACC asserts a contributory trademark infringement claim pursuant to

20   Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).  DMS Flowers Defendants allege that

21   Teleflora materially contributed to the alleged infringement of Plaintiffs' valid, protectable

22   trademark based on Teleflora's delay in substituting the business name despite Teleflora's "ability

23   to monitor and supervise its business to execute directions from members" like DMS Flowers

24   Defendants, resulting in DMS Flowers Defendants' harm. *Id.* ¶¶ 44-48.

25       Claim 4 of the FACC asserts that Teleflora's negligent delay in updating DMS Flowers

26   Defendants' business name caused "significant disruption" to their contractual relationships and

27   business operations and resulted in "substantial damages" including Plaintiffs' infringement suit

28

4

1    against them.  *Id.* ¶¶ 53-59.  DMS Flowers Defendants seek at least $150,000 in damages caused

2    by Teleflora's negligent interference.  *Id.* ¶ 60.

3         Claim 5 of the FACC asserts an equitable indemnity claim, alleging that if DMS Flowers

4    Defendants are liable for any of Plaintiffs' claimed damages in their complaint against them, then

5    any such liability is the result of Teleflora's acts or omissions for which Teleflora is liable "under

6    principles of equitable indemnity."  *Id.* ¶ 64.  Specifically, DMS Flowers Defendants assert that if

7    Plaintiffs recover against them, then DMS Flowers Defendants are entitled to total or partial

8    indemnity from Teleflora for Plaintiffs' sustained damages in the form of equitable indemnity

9    damages.  *Id.* ¶ 67.

10         In the FACC, DMS Flowers Defendants seek general damages of $150,000 for the financial

11    losses incurred due to Teleflora's delay in updating the business name, including but not limited to

12    legal fees, costs associated with the trademark infringement lawsuit, and compensation for the

13    disruption of business operations and lost revenue; special damages in an amount to be proven at

14    trial, including but not limited to the harm caused to DMS Flower Defendants' business reputation

15    and the loss of business opportunities resulting from Teleflora's breach of contract; punitive

16    damages in amount to be determined by the Court as a result of Teleflora's intentional and

17    egregious conduct in failing to act promptly upon DMS Flower Defendants' request, thereby

18    causing substantial harm to their business; and for pre-judgment and post-judgment interest and

19    costs.  (Doc. 92 at 13).

20    **II.    Governing Authority**

21         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss

22    a plaintiff's complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ.

23    P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star*

24    *Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371,

25    374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a

26    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

27    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean*

28    *Witter Reynolds, Inc*., 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp.2d 1158, 1162, n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id.* In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). Accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to

1    dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th

2    Cir. 2002). "A court may treat such a document as 'part of the complaint, and thus may assume

3    that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Hamilton*, 746

4    F. Supp.2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

5         In addition, a Court may find in connection with a Rule 12(b)(6) motion matters of public

6    record suitable for judicial notice and "unattached evidence on which the complaint necessarily

7    relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's

8    claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians*

9    *Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting

10    *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)). The Court may review

11    such material without converting a motion to dismiss into a motion for summary judgment. *Harris*

12    *v. Cnty. of Orange*, 17 F.4th 849, 865 (9th Cir. 2021) (Forrest, J., concurring); *Khoja v. Orexigen*

13    *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

14    **III.    Parties' Contentions**

15         Teleflora contends DMS Flowers Defendants' FACC must be dismissed in its entirety.

16    (Doc. 106 at 2). It asserts the first crossclaim for breach of contract is defective as it fails to allege

17    a specific contractual provision Teleflora allegedly breached and express terms of the parties'

18    agreement contradict the allegations of the claim. *Id.* Teleflora contends the second crossclaim for

19    breach of the implied covenant of good faith and fair dealing likewise fails to identify any contract

20    provision on which the claim hinges, nor can it, as the parties' contract expressly contradicts any

21    alleged obligation, and no deliberate breach is otherwise alleged. *Id.* Teleflora argues the third

22    crossclaim for contributory trademark infringement fails for DMS Flowers Defendants' lack of

23    standing and failure to state a claim. *Id.* Teleflora asserts the fourth crossclaim for negligence is

24    barred under both the economic loss rule and the parties' contractual limitation of liability

25    provision. *Id.* Lastly, Teleflora argues the fifth crossclaim for equitable indemnity must be

26    dismissed for failure to allege a legally cognizable theory and/or facts sufficient to support such a

27    theory. *Id.*

28

1    DMS Flowers Defendants oppose Teleflora's motion, contending that each of its

2    crossclaims are sufficiently pled at this stage of the proceedings such that Teleflora has fair notice

3    of facts and claims. (Doc. 110 at 9). DMS Flowers Defendants argue the FACC sufficiently pleads

4    "[a]ll four required elements" for the breach of contract claim and provides Teleflora "fair notice

5    [of] the claim and grounds it rests upon." *Id.* at 11-12. DMS Flowers Defendants likewise contend

6    the FACC adequately pleads its claims for breach of the implied covenant of good faith and fair

7    dealing. *Id.* at 13-14. DMS Flowers Defendants further contend its remaining three claims for

8    contributory trademark infringement, negligence, and equitable indemnity are sufficiently pled. *Id.*

9    at 14-20. DMS Flowers Defendants request leave to file a further amended crossclaim should the

10   Court determine that the FACC is deficient in any respect. *Id.* at 21.

11   Teleflora argues in reply that DMS Flowers Defendants fail to point to a specific contractual

12   provision of the parties' agreement that Teleflora allegedly breached, and DMS Flowers

13   Defendants only "allude to 'obligations' that are glaringly absent from the [p]arties' contract."

14   (Doc. 113 at 2). Teleflora argues that DMS Flowers Defendants fail to address the issue of standing

15   regarding the contributory infringement crossclaim. *Id.* Further, Teleflora asserts DMS Flowers

16   Defendants fail to cite any authority showing the negligence crossclaim is not barred under the

17   economic loss rule and that the equitable indemnity crossclaim has any basis or is not contradicted

18   from the parties' express agreement that DMS Flowers Defendants would indemnify Teleflora. *Id.*

19   At the hearing on Teleflora's motion to dismiss the FACC, DMS Flowers Defendants

20   confirmed they do not oppose the Court taking judicial notice of Teleflora's proffers of the parties'

21   contract at issue in this dispute. (Doc. 117); *see* (Doc. 106-2). As to the breach of contract

22   crossclaim, DMS Flowers Defendants conceded that no particular section or express provision of

23   the parties' contract addresses the purported duties they allege Teleflora breached, however, DMS

24   Flowers Defendants indicated leave to amend is warranted based on a purported, separate

25   agreement consummated in an email exchange between them and Teleflora where notice was given

26   to make the requested trademark name change. *See id.* As to the breach of the implied covenant

27   of good faith and fair dealing crossclaim, DMS Flowers Defendants affirmed that the crossclaim

28   does not plead any bad faith on part of Teleflora, and that they do not believe any allegation of bad

1    faith could be pleaded in a second amended cross-complaint.  *See id.*  As to the contributory

2    infringement crossclaim, DMS Flowers Defendants agreed with the Court that third parties

3    generally lack standing to invoke the property rights of another party to seek a claim of contributory

4    infringement absent primary ownership of a disputed trademark.  *See id.*  As to the equitable

5    indemnity crossclaim, which the Court noted is a derivative claim of the negligence crossclaim,

6    DMS Flowers Defendants argued that the binding term of the parties' agreement regarding

7    contractual indemnity should not bar the crossclaim because DMS Flowers Defendants were

8    exposed to damages in excess of what it would have been had Teleflora taken the requested action

9    in promptly changing the trademark name.  *See id.*

10   **IV.    <u>Discussion</u>**

11           **A.    Request for Judicial Notice**

12           Teleflora requests the Court take judicial notice of the written contracts between DMS

13   Flowers Defendants and Teleflora as both the FACC and the pending motion to dismiss the FACC

14   "relies on and extensively refers to the [p]arties' written contract."  (Doc. 106-2 at 2) (citing

15   Declaration of Jim Reeds ("Reeds Decl.") ¶¶ 3-6, Exs. A-D)).  Teleflora argues that DMS Flowers

16   Defendants' FACC alleges a written contract and brings crossclaims for breach of contract and

17   breach of the implied covenant of good faith and fair dealing based on that written contract.  (*Id.* at

18   3).  Teleflora contends that the FACC refers to the written contract or alleged obligations therein

19   "no less than 21 times[.]"  *Id.*  Thus, Teleflora requests the Court grant the request for judicial

20   notice and deem the parties' written contract—the MyTeleflora Terms of Use (*see* Reeds Decl. ¶¶

21   3-4, Exs. A, B)—incorporated by reference and subject to consideration by the Court in connection

22   with its pending motion to dismiss the FACC.  *Id.*

23           As noted above, DMS Flowers Defendants affirmed at the hearing that they do not oppose

24   the Court taking judicial notice of Teleflora's proffers of the parties' contract, and no opposition to

25   the request for judicial notice appears throughout the opposition brief.  *See* (Docs. 106-2, 110, 117).

26   Given DMS Flowers Defendants do not object to the request for judicial notice, and the FACC's

27   extensive reference to the parties' written agreement, the Court finds good cause to judicially notice

28   the contract and contents therein.  *See* Fed. R. Evid. 201(c) (court "must take judicial notice if a

9

1   party requests it and the court is supplied with the necessary information."; *Ritchie*, 342 F.3d at 908

2   ("Even if a document is not attached to a complaint, it may be incorporated by reference into a

3   complaint if the plaintiff refers extensively to the document or the document forms the basis of the

4   plaintiff's claim."); *e.g.*, *Scott v. Bluegreen Vacations Unlimited, Inc.*, No. 19-CV-01807-AWI-JLT,

5   2020 WL 3296190, at \*3-4 (E.D. Cal. June 18, 2020) (court taking judicial notice of the "existence

6   and legal effect" of the parties' contracts in deciding a motion to dismiss where plaintiffs did not

7   object to moving defendants' request for judicial notice nor raise any challenge to the authenticity

8   of the contracts as filed by moving defendants in support of the motion to dismiss); accord, *Daniels*

9   *v. United States*, No. 3:16-CV-02077-BTM-DHB, 2017 WL 3478765, at \*4 (S.D. Cal. Aug. 11,

10  2017) ("The Court may take judicial notice of the 'existence and legal effect' of contracts between

11  the parties 'that provide the foundations for [a plaintiff's] claims.'") (quoting *Neilson v. Union Bank*

12  *of California, N.A*., 290 F. Supp.2d 1101, 1114 (C.D. Cal. 2003)).    Therefore, the Court grants

13  Teleflora's request for judicial notice.

14         **B.    Crossclaim 1: Breach of Contract**

15             1.    *Governing Authority*

16         Under California law, the elements of a breach of contract claim are: "(1) the existence of

17  a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

18  (4) the resulting damages to the plaintiff."    *Phillips 66 Company v. Bananzadeh*, No. 2:21-cv-

19  01747-JAM-JDP, 2022 WL 1036632, at \*2 (E.D. Cal. Apr. 6, 2022) (citing *McVicar v. Goodman*

20  *Glob., Inc.*, 1 F. Supp.3d 1044, 1056 (C.D. Cal. 2014); *see Oasis W. Realty, Inc. v. Goldman*, 51

21  Cal. 4th 811, 821 (2011).    "Under the federal rules, a plaintiff may set forth the contract verbatim

22  in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect."

23  *Bananzadeh*, 2022 WL 1036632 at \*2 (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.

24  Supp.2d 1094, 1102 (E.D. Cal. 2010)).

25             2.    *Analysis*

26         Teleflora moves to dismiss the FACC's breach of contract crossclaim on the grounds that

27  the FACC fails to identify any contract or provision setting forth the supposed obligations Teleflora

28  allegedly breached.    Instead, the parties' written contract, the MyTeleflora Terms of Use, contains

1    express provisions that contradict these purported obligations Teleflora allegedly owed.  (Doc. 106

2    at 13-14).

3          DMS Flowers Defendants fail to sufficiently allege that Teleflora breached any part of the

4    parties' written agreement of which the Court has taken judicial notice as noted above.  Although

5    DMS Flowers Defendants need not set out the terms of the contract in detail, they "must identify

6    enough contractual terms with sufficient factual specificity to render [their] claim more than 'a

7    [formulaic] recitation of the elements' of a breach of contract claim." *Park v. Morgan Stanley &*

8    *Co.*, 2012 WL 589653, at *3 (C.D. Cal. Feb. 22, 2012) (quoting *Iqbal*, 556 U.S. at 678).  The FACC

9    provides generalized allegations of a contractual breach—the crux of which concerns Teleflora's

10   failure to promptly update the trademarked business name after Andrade made the request on

11   December 12, 2023—without identifying any provision of the judicially noticed contract that even

12   arguably imposes such a duty.  *See* (Doc. 92 ¶ 29 ["[Andrade] entered into a contractual agreement

13   with [Teleflora]….  This contract included specific obligations …."]; ¶ 30 [The contract stipulated

14   that …"]; ¶  32 [Teleflora] breached these contractual obligations …"]; ¶ 33 ["By failing to

15   promptly update [Andrade's] business name, [Teleflora] … expressly violated the contractual

16   agreement to ensure accurate advertising."]).  Without plausibly identifying a provision of the

17   parties' written agreement that allegedly was violated, DMS Flowers Defendants fail to

18   demonstrate "specific obligations" Teleflora breached, and the breach of contract crossclaim is thus

19   insufficient to survive a motion to dismiss.  *See Millsaps v. State Farm Ins. Cos.*, No. 2:24-cv-3673-

20   DC-JDP (PS), 2025 WL 457983, at *2 (E.D. Cal. Feb. 11, 2025) ("The complaint is … subject to

21   dismissal for failure to state a claim … [T]he complaint must identify the specific provision of the

22   contract allegedly breached by the defendant. … Plaintiff neither provides allegations … nor

23   specifies the provisions of the contract that defendant allegedly breached.") (citing *Donohue v.*

24   *Apple, Inc.*, 871 F. Supp.2d 913, 930 (N.D. Cal. 2012)); *Lewis v. Synchrony Bank*, No. 2:24-cv-

25   00110-DAD-JDP, 2024 WL 3494175, at *5 (E.D. Cal. July 22, 2024) (same); accord, *AK Futures*

26   *LLC v. LCF Labs, Inc.*, No. 8:21-cv-02121-JVS (ADSx), 2022 WL 16859970, at *5 (C.D. Cal. Oct.

27   5, 2022) ("It is not clear from the face of the [complaint] which agreement forms the basis for each

28   of these breaches or which provision(s) therein are alleged to have been breached.  LCF and

1     Homesun must identify with specificity which parties were bound by each agreement, which terms

2     were breached, and by whom.").  Additionally, upon review of the MyTeleflora Terms of Use, it

3     does not appear any of its terms or provisions of the parties' contract were breached as alleged in

4     the FACC.  *See* (Doc. 106-1 ("MyTeleflora Terms of Use")).

5         As noted above, DMS Flowers Defendants conceded at the hearing that the FACC fails to

6     identify any particular section or express provision of the MyTeleflora Terms of Use that was

7     breached but that leave to amend the breach of contract crossclaim is warranted based on a

8     purported, separate agreement drawn from an email exchange between DMS Flowers Defendants

9     and Teleflora.  Thus, the Court grants Teleflora's motion to dismiss the breach of contract

10    crossclaim with prejudice as to any claims arising from breach of the terms of the judicially noticed

11    written contract.  The breach of contract crossclaim is dismissed without prejudice to the extent

12    breach of other agreements aside from the judicially noticed written contract (*e.g.*, DMS Flowers'

13    reference to an email exchange with Teleflora) may be alleged in a further amended cross-

14    complaint.

15       **C.**      **Crossclaim 2: Breach of the Covenant of Good Faith and Fair Dealing**

16          1.    *Governing Authority*

17         Under California law, "every contract imposes upon each party a duty of good faith and fair

18    dealing in its performance and its enforcement." *Evanston Ins. Co. v. Harrison*, No. 2:20-cv-01672

19    WBS KJN, 2021 WL 260011, at *2 (E.D. Cal. Jan. 26, 2021) (citing *Jonathan Neil & Assocs., Inc.*

20    *v. Jones*, 33 Cal. 4th 917, 937 (2004)).  "The precise nature and extent of the duty imposed by the

21    implied covenant of good faith depends on the purpose of the underlying contract." *Id.*  The implied

22    covenant "cannot impose substantive duties beyond those incorporated in the specific terms of a

23    contract."    *Id.*   (citing   *Guz v. Bechtel Nat'l, Inc.*,   24   Cal.   4th   317,   349   (2000)).

24    "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a

25    contracting party from engaging in conduct that frustrates the other party's rights to the benefits of

26    the agreement." *City of Fresno v. Tokio Marine Specialty Ins. Co.*, 1:18-cv-00504-LJO-SAB, 2018

27    WL 3691407, at *4 (E.D. Cal. Aug. 1, 2018) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1,

28    36 (1995), as modified on denial of rehearing (Oct. 26, 1995)).

1    "A breach of the implied covenant of good faith and fair dealing involves something beyond

2    breach of the contractual duty itself, and it has been held that [b]ad faith implies unfair dealing

3    rather than mistaken judgment[.]" *Id.* (citing *Chateau Chamberay Homeowners Ass'n v. Associated*

4    *Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (citation and quotations omitted)).

5              2.    *Analysis*

6    Teleflora moves to dismiss the second crossclaim for breach of the implied covenant of

7    good faith and fair dealing as legally insufficient as the FACC fails to plausibly allege the breach

8    of any express or implied contractual provision regarding the advertising and/or updating of DMS

9    Flower Defendants' business name in connection with Teleflora's services and the FACC does not

10   allege any conscious and deliberate breach on by Teleflora.  (Doc. 106 at 20).

11   The Court agrees that the FACC fails to state a claim for breach of the implied covenant of

12   good faith and fair dealing because the crossclaim is not tethered to any term or provision of the

13   parties' written contract.  Indeed, the crossclaim alleges only generally that Teleflora, "by agreeing

14   to advertise [DMS Flower Defendants'] business, implicitly promised to act in good faith and deal

15   fairly in fulfilling its contractual obligations."  (Doc. 92 ¶ 40).  Though the FACC asserts Teleflora

16   breached the implied covenant by "delaying the update … despite knowing the urgency and the

17   potential legal repercussions" for DMS Flowers Defendants, no provision of the parties' agreement

18   imparted the duty of good faith and fair dealing in the performance and enforcement of updating

19   the trademarked name on Teleflora.  *See Harrison*, 2021 WL 260011, at *2 ("[The implied

20   covenant] cannot impose substantive duties beyond those incorporated in the specific terms of a

21   contract.") (citation omitted); *e.g.*, *West Am. Ins. Co. v. Shaghal Ltd.*, No. CV 21-07751-CJC

22   (JPRx), 2022 WL 17370532, at *3 (C.D. Cal. June 23, 2022) ("The covenant is read into contracts

23   and functions as a *supplement* to the express contractual covenants, to prevent a contracting party

24   from engaging in conduct which (while not technically transgressing the express covenants)

25   frustrates the party's rights to the benefits of the contract. … Shaghal has failed to provide sufficient

26   information about the terms and provisions of the contract to adequately plead a breach of the

27   implied covenant of good faith and fair dealing claim and is thus deficient.") (citing *Thrifty Payless,*

28   *Inc. v. The Americana at Brand*, 218 Cal. App. 4th 1230, 1244 (2013)) (emphasis in original); *All*

13

1    *Green Elec., Inc. v. Sec'y Nat'l Ins. Co.*, 22 Cal. App. 5th 407, 418 (2018) ("The lack of an

2    underlying contractual obligation also precluded a claim under the implied covenant of good faith

3    and fair dealing.").

4        Whereas a court may disregard a claim for breach of the covenant of good faith that is

5    duplicative of a cognizable breach of contract claim, an exception to this rule exists where "the

6    defendant allegedly acted in bad faith to impede the benefits that plaintiff was to have derived from

7    the contract." *Soundgarden v. UMG Recordings, Inc.*, No. LA CV19-05449 JAK (JPRx), 2020

8    WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020).  Here, the crossclaim does not allege that Teleflora

9    acted with bad faith in breaching the implied covenant.  Indeed, DMS Flowers Defendants

10   conceded at the motion hearing that the crossclaim does not plead any bad faith nor is there any

11   information that would lead DMS Flowers Defendants to believe Teleflora acted with bad faith and

12   that no bad faith could be alleged in an amended crossclaim. *Cf Nestle USA, Inc. v. Crest Foods,*

13   *Inc.*, No. LA CV16-07519 JAK (AFMx), 2019 WL 2619635, at *4 (C.D. Cal. Mar. 8, 2019) (breach

14   of implied covenant allegations withstood motion to dismiss where complaining party plausibly

15   alleged third party sought to undermine agreements and interfere with its business relationships for

16   the purpose of financially harming complaining party).

17       At the motion hearing, DMS Flowers Defendants argued that the performance of the parties'

18   agreement "would change" based on the parties' reported email exchange regarding the requested

19   name change.  In response, Teleflora acknowledged that DMS Flowers Defendants might plausibly

20   assert a crossclaim for breach of the implied covenant of good faith and fair dealing were it alleged

21   the parties reached an understanding via email that Teleflora would take certain action with respect

22   to the parties' agreement, thereby imposing on Teleflora a duty of good faith and fair dealing in

23   executing the requested action. *See* (Doc. 92 ¶ 42) ("[Teleflora] breached the covenant … by failing

24   to promptly remove the [trademarked] name … from their advertisements after [DMS Flowers

25   Defendants] *notified* them on or about December 12, 2023, about the trademark infringement issue

26   and requested the name change[.]") (emphasis added); (Doc. 106-1 at 20 ¶ 20) (eFlorist Program

27   Terms of Use monitoring provision). *See also Young v. Facebook, Inc*., 790 F. Supp.2d 1110, 1117

28   (N.D. Cal. 2011) ("[A] party must take on an obligation, either expressly or impliedly, before it can

14

be said to have acted in bad faith by not carrying it out.").  Thus, the Court grants Teleflora's motion to dismiss the breach of the implied covenant of good faith and fair dealing crossclaim without prejudice to the extent DMS Flowers Defendants can amend the crossclaim to plausibly allege a valid duty of good faith and fair dealing on Teleflora tethered to the parties' agreement.

### D.    Crossclaim 3: Contributory Trademark Infringement (Section 43(a) of the Lanham Act)

#### 1.    *Governing Authority*

A defendant may be held liable for contributory trademark infringement if he or she "(1) intentionally induces another to infringe on a trademark or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854–55 (1982)).  The "supplies a product" requirement for contributory infringement has been expanded to include "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark."  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).

#### 2.    *Analysis*

Teleflora seeks dismissal of the contributory trademark infringement crossclaim for failure to state a claim as DMS Flowers Defendants lack standing to assert Plaintiffs' purported trade-identity rights and otherwise fails to allege facts sufficient to support a claim of contributory liability.  (Doc. 106 at 21).

The Court agrees.  DMS Flowers Defendants fail to show in the FACC or its opposition to the motion to dismiss that, as third parties, they have standing to invoke the property rights of another primary mark holder to seek a claim of contributory infringement.  Indeed, DMS Flowers Defendants conceded at the hearing that they lack standing to invoke Plaintiffs' purported trademark rights. *See Cohen v. Suleminian*, No. 2:12-cv-08597-SSS-ASx, 2023 WL 6851716, at *3 (C.D. Cal. July 3, 2023) ("A party lacks standing to sue for trademark infringement if it does not own the trademark at issue.") (quotation and citation omitted); *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 200 (E.D.N.Y. 1997) (dismissing contributory trademark

1    infringement counterclaim because the counterclaimants had no legal interest in the allegedly

2    infringed mark).

3         Because DMS Flowers Defendants concede they lack standing to bring the crossclaim, and

4    it does not appear any additional facts could be alleged in an amended crossclaim to assert the

5    claim, the Court grants Teleflora's motion to dismiss the contributory trademark infringement

6    crossclaim with prejudice. *See Cook, Perkiss & Liehe v. N. Cal. Collection* Service, 911 F.2d 242,

7    247 (9th Cir. 1990) (court ordinarily should grant leave to amend "unless it determines that the

8    pleading could not possibly be cured by the allegation of other facts").

9         **E.**     **Crossclaim 4: Negligence**

10        1.     *Governing Authority*

11        In California, "[t]he elements of a negligence cause of action are the existence of a legal

12   duty of care, breach of that duty, and proximate cause resulting in injury." *Mejia v. JPMorgan*

13   *Chase Bank, N.A.*, No. 21-cv-01351-HSG, 2021 WL 6498762, at *1 (N.D. Cal. Sept. 8, 2021)

14   (citing *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013)). "The existence of a duty of

15   care owed by a defendant to a plaintiff is a 'prerequisite' to establishing a claim for negligence."

16   *Id.* (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991)).

17        "Although 'the same wrongful act may constitute both a breach of contract and an invasion

18   of an interest protected by the law of torts[,]' a plaintiff must still identify a duty to support a claim

19   in tort." *Green v. ADT, LLC*, No. 16-cv-02227-LB, 2016 WL 5339800, at *2 (N.D. Cal. Sept. 23,

20   2016) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)).

21        "Generally, purely economic losses are not recoverable in tort." *NuCal Foods, Inc. v.*

22   *Quality Egg LLC*, 918 F. Supp.2d 1023, 1028 (E.D. Cal. Jan. 16, 2013) (citing *S.M. Wilson & Co.*

23   *v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978)). "[T]he economic loss rule 'prevent[s]

24   the law of contract and the law of tort from dissolving one into the other.'" *Id.* (citing *Robinson*

25   *Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004)); *Toyo Tire Holdings of Americas Inc.*

26   *v. Ameri and Partners, Inc.*, 753 F. Supp.3d 966, 977 (C.D. Cal. Sept. 11, 2024) ("The economic

27   loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to

28   contract damages.") (citations omitted). Relevant here, a plaintiff may recover in tort apart from a

contract breach, notwithstanding the economic loss rule, (1) when a defendant breaches a legal duty independent of the contract, irrespective of whether damages are economic, or (2) if a "special relationship" existed between the parties. *Id.* at 1029. Additionally, Ninth Circuit courts have recognized an exception to the economic loss rule for fraud claims based on affirmative misrepresentations. *Toyo Tire Holdings of Americas Inc.*, 753 F. Supp.3d at 978 (citing cases).

2.    *Analysis*

Teleflora seeks dismissal of the negligence crossclaim because the claim is barred by the economic loss doctrine and the limitation of liability provision of the parties' contract. (Doc. 106 at 23).

Here, the Court finds the FACC fails to allege any exception from the bar of the economic loss rule. DMS Flowers Defendants do not allege that Teleflora caused damage to any other property in seeking what are otherwise pecuniary damages based on Plaintiffs' claims against DMS Flowers Defendants. *See* (Doc. 92 ¶ 60) ("[DMS Flowers Defendants] seeks at least $150,000 in damages for the financial losses and harm caused by [Teleflora's] negligent interference[.]"). Nor does the FACC allege any special relationship between the parties or that Teleflora has breached any independent tort duty to sustain an exception from the economic loss rule. The FACC alleges only that the negligence crossclaim derives from the "valid contract" DMS Flowers Defendants entered into with Teleflora. *See id.* ¶ 51. Additionally, the FACC does not allege any fraud or affirmative misrepresentation on Teleflora.

Because the negligence crossclaim fails to sufficiently plead any exception to bar of the economic loss rule and is otherwise a general negligence claim premised on the FACC's breach of contract crossclaim seeking recovery of purely pecuniary losses, the claim fails. *NuCal Foods, Inc.*, 918 F. Supp.2d at 1028. Additionally, because it does not appear the crossclaim could be cured by any additional facts to escape the economic loss rule, further amendment of the claim appears futile and the Court grants Teleflora's motion to dismiss the negligence crossclaim with prejudice. *Doe*, 58 F.3d at 497. *See, e.g., Dante Valve Co. v. Republic Brass Sales, Inc*., No. 17-cv-2582-AJB-WVG, 2019 WL 1406583, at *6-7 (S.D. Cal. Mar. 28, 2019) (dismissing under

1    economic loss doctrine negligence claim premised on non-cognizable trademark infringement

2    claim, without leave to amend).

3        **F.    Crossclaim 5: Equitable Indemnity**

4            1.    *Governing Authority*

5        "The doctrine of equitable indemnity applies only to defendants who are jointly and

6    severally liable to the underlying plaintiff." *Certain Underwriters at Lloyd's of London Subscribing*

7    *to Policy No. E & O 14 10873 A v. General Star Indemnity Co.*, 339 F. Supp.3d 930, 932 (E.D. Cal.

8    Sept. 13, 2018); *see Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v.*

9    *Abaxis, Inc*., 491 F. Supp.3d 506, 516 (N.D. Cal. Sept. 30, 2020) ("The doctrine of equitable

10   indemnity "permit[s] a concurrent tortfeasor to obtain partial indemnity from other concurrent

11   tortfeasors on a comparative fault basis.") (quoting *Am. Motorcycle Ass'n v. Super. Ct*., 20 Cal. 3d

12   578, 598 (1978)). "To assert equitable indemnity there must be a joint legal obligation to the injured

13   party, *i.e.*, 'there can be no indemnity without liability.'" *Abaxis, Inc*., 491 F. Supp.3d at 516 (citing

14   *Prince v. Pac. Gas. & Elec. Co*., 45 Cal. 4th 1151, 1165 (2009)). "A claim for equitable indemnity

15   requires a tort claim asserted by the original plaintiff against the proposed indemnitee on which to

16   base joint and several liability, between the proposed indemnitor and indemnitee." *Miller v. Sec.*

17   *Life of Denver Ins. Co*., No. C 11-1175 PJH, 2012 WL 1029279, at *5 (N.D. Cal. Mar. 26, 2012).

18   "[C]ourts have … rejected equitable indemnity claims based on an underlying breach of contract

19   claim." *Abaxis, Inc.*, 491 F. Supp.3d at 519; *e.g.*, *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec.*

20   *Co*., No. 14-cv-00930-JCS, 2014 WL 4364393, at *7 (N.D. Cal. Aug. 29, 2014) ("Breach of [a]

21   contractual duty—even if negligent—does not give rise to tort liability and cannot support a claim

22   for equitable indemnity.").

23            2.    *Analysis*

24       Teleflora seeks dismissal of the equitable indemnity crossclaim as the FACC does not assert

25   a basis for tort liability and thus fails to state a claim.  (Doc. 113 at 7).

26       The equitable indemnity crossclaim fails to state a claim because, as found above, DMS

27   Flowers Defendants have not sufficiently and are unable to assert any basis for tort liability against

28   Teleflora.  *General Star Indemnity Co.*, 339 F. Supp.3d at 932 ("There must be some basis for tort

liability against the proposed indemnitor and it is generally based on a duty owed to the underlying plaintiff.").  In the absence of any duty Teleflora owed to DMS Flowers Defendants from which tort liability may be based, the crossclaim fails as a matter of law.  And because it does not appear DMS Flowers Defendants may sufficiently allege any basis for tort liability to sustain an equitable indemnity claim in an amended crossclaim, the Court grants Teleflora's motion to dismiss this claim with prejudice.

### G.    Leave to Amend

A court considers five factors in deciding whether leave to amend is appropriate: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Federal Rule of Civil Procedure 15(a) provides that "leave to amend should be freely granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see* Fed. R. Civ. P. 15(a)(2).  However, a court may deny leave to amend if it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Lopez*, 203 F.3d at 1129 ("Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.").  When a complaint cannot be cured by additional facts, leave to amend need not be provided.  *Doe*, 58 F.3d at 497.

As noted above, the Court finds further amendment of DMS Flowers Defendants' crossclaims for breach of contract and breach of the implied covenant of good faith and fair dealing warranted based on the possibility the DMS Flower Defendants may be able to allege sufficient factual basis to sustain these claims in an amended cross-complaint.  For the reasons set forth above, the Court has found that the remaining crossclaims must be dismissed with prejudice and without leave to amend as it does not appear those claims could be cured by additional facts.

### V.    Conclusion and Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendant/Cross-Defendant Teleflora, LLC's unopposed request for judicial notice (Doc. 106-2) is GRANTED;

2. Defendant/Cross-Defendant Teleflora, LLC's motion to dismiss (Doc. 106) is GRANTED;

3. DMS Flowers Defendants' First Amended Cross-Complaint (Doc. 92) is DISMISSED with leave to amend claims as follows:

    a. Crossclaim 1 for breach of contract is dismissed with leave to amend, as set forth above;

    b. Crossclaim 2 for breach of the implied covenant of good faith and fair dealing is dismissed with leave to amend, as set forth above;

    c. Crossclaims 3, 4, and 5 for contributory trademark infringement, negligence, and equitable indemnity are dismissed with prejudice and without leave to amend.

4. DMS Flowers Defendants SHALL FILE **within 21 days** of entry of this order any second amended cross-complaint ("SACC") consistent with this order.

5. Defendant/Cross-Defendant Teleflora, LLC SHALL FILE a response to the SACC **within 14 days** from its filing.

IT IS SO ORDERED.

Dated:   **July 14, 2025**

                              UNITED STATES MAGISTRATE JUDGE