1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GIBRALTER, LLC, *et al.*,                    Case No. 1:24-cv-00174-CDB

12                  Plaintiffs,                    ORDER GRANTING DEFENDANT
                                                   TELEFLORA, LLC'S MOTION TO DISMISS
13          v.                                     THE FIRST AMENDED COMPLAINT WITH
                                                   LEAVE TO AMEND
14   DMS FLOWERS, LLC, *et al.*,
                                                   (Doc. 111)
15                  Defendants.
                                                   **21-DAY DEADLINE**
16

17

18          Pending before the Court[1] is the motion of Defendant Teleflora, LLC ("Teleflora") to

19   dismiss the first amended complaint ("FAC") of Plaintiffs Gibralter, LLC ("Gibralter"), and

20   Divinely, Inc. ("Divinely") (collectively, "Plaintiffs"), filed on June 9, 2025. (Doc. 111). On June

21   23, 2025, Plaintiffs filed an opposition to the motion to dismiss, and on July 3, 2025, Teleflora filed

22   a reply. (Docs. 115, 121). Following review of the parties' filings made in connection with the

23   motion, the Court deemed the motion suitable for disposition without hearing and oral argument.

24   (Doc. 122) (citing Local Rule 230(g)). For the reasons set forth herein, the Court will grant

25   Teleflora's motion to dismiss the FAC with leave to amend.

26   _____

27          [1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for
     all further proceedings in this action, including trial and entry of judgment, on May 22, 2025, this
28   action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 105).

1    I.        **Relevant Background**

2         A.        **Procedural History**

3         On February 6, 2024, Plaintiffs initiated this action with the filing of a complaint against

4    Defendants Daniel Andrade ("Andrade"), Samantha Andrade, DMS Flowers, LLC, and Maria

5    Pantoja (collectively, the "DMS Flowers Defendants").  (Doc. 1).  In his answer to Plaintiffs'

6    complaint (filed while appearing pro se), Andrade asserted a "crossclaim complaint" against

7    Teleflora, a corporation allegedly doing business in Bakersfield, California.  (Docs. 38, 39).

8         The scheduling of the case was complicated and significantly delayed given the entry of

9    defaults against certain Defendants, their pro se status (initially), and the litigation of motions for

10   default judgment and to set aside defaults.  Following a scheduling conference at which the DMS

11   Flowers Defendants appeared pro se, on November 22, 2024, the Court entered the operative

12   scheduling order (*see* Doc. 68), and in the months that followed, the DMS Flowers Defendants

13   retained counsel and successfully litigated the setting aside of defaults (*see* Docs. 44, 89).

14        On December 30, 2024, the Court granted the parties' construed joint motion for joinder of

15   putative Defendant/Cross-Defendant Teleflora under either Rule 19(a)(1)(A) and (B) as a required

16   party or under Rule 20(a)(2) as a permissive party.  (Doc. 78).  On March 24, 2025, the Court

17   granted the parties' unopposed motions to amend the complaint and to amend the DMS Flowers

18   Defendants' crossclaim against Teleflora.  (Doc. 90).  On March 25, 2025, the DMS Flowers

19   Defendants filed the first amended cross-complaint and on March 27, 2025, Plaintiffs filed the

20   operative, first amended complaint ("FAC").  (Docs. 92, 93).  On May 15, 2025, the DMS Flowers

21   Defendants filed an answer to the first amended complaint.  (Doc. 99).

22        On May 28, 2025, the Court vacated all case management dates and deadlines and noted

23   that an amended scheduling order will enter following the settling of the pleadings.  *See* (Doc. 108

24   at 3).  On July 14, 2025, the Court granted Teleflora's unopposed request for judicial notice and

25   motion to dismiss the first amended cross-complaint with leave to amend certain claims.  (Doc.

26   123).  DMS Flowers Defendants filed the second amended cross-complaint against Teleflora on

27

28

2

1    July 25, 2025.[2]  (Doc. 125).  On August 4, 2025, the Court granted in part and denied in part

2    Plaintiffs' motion to strike DMS Flowers Defendants' affirmative defenses to the FAC.  (Doc. 127).

3    DMS Flowers Defendants thereafter filed an amended answer to the FAC on August 25, 2025.

4    (Doc. 131).

5         **B.**     **Factual Background of Plaintiffs' FAC**

6           According to allegations contained in the FAC, DMS Flowers Defendants Daniel Andrade,

7    Samantha Andrade, and Maria Pantoja are owners, business partners, shareholders, members,

8    managers, or other authority figures of DMS Flowers, LLC, the successor in interest to Bloomingful

9    Flowers, which continues to sell florals under the tradename "Bloomingful Flowers" in direct

10   competition to Divinely.  (Doc. 93 ¶¶ 18-22).  Teleflora is a limited liability company that "is in

11   the business of selling florals from various venders throughout the United States and Canada across

12   its online platform" and provides "estores" on their affiliate network to individual and/or corporate

13   flower shops.  *Id.* ¶ 23.

14          Plaintiffs allege that this case arises from Defendants' (including DMS Flowers Defendants

15   and Teleflora) infringement and continued use of Gibralter's registered trademark

16   "BLOOMINGFUL" ("Mark")[3].  *Id.* ¶ 7; *see id.* ¶¶ 25-33, 38-52; *see id.* at 28-32, Ex. 4.  Plaintiffs

17   allege the MARK is "covered by an incontestable federal trademark Registration" and is "well

18   known among floral wholesalers and consumers[.]"  *Id.* ¶ 10.  Plaintiffs allege Defendants, as direct

19   competitors of Plaintiffs, began using the identical MARK for their floral business in May 2023.

---

20
21       [2] Teleflora filed a pending motion to dismiss DMS Flowers Defendants' second amended cross-complaint on August 7, 2025, which the Court will address in a forthcoming order.  (Doc. 128).

22
23       [3] Plaintiffs allege that on August 14, 2018, Divinely registered the MARK on the principal
24   register #5540108 before it was assigned to Cabrini, LLC ("Cabrini"), on November 10, 2021. (Doc. 93 ¶¶ 26, 27); *see id.* at 24-25, Exs. 1-2.  Cabrini granted Divinely and its designated affiliates the sole and exclusive right to use the MARK.  *Id.* ¶ 28.  On July 15, 2023, Cabrini thereafter
25   assigned the MARK to Gibralter, which reaffirmed the grant of sole and exclusive use of the MARK to Divinely.  *Id.* ¶¶ 29, 30; *see id.* at 26-27, Ex. 3.  On September 1, 2023, Gibralter filed the
26   combined Declaration of Use and Incontestability application under Sections 8 and 15, which was accepted and approved by the United States Patent and Trademark Office.  *Id.* ¶ 33.  Plaintiffs
27   allege that "[n]one of the Defendants are or were affiliated entities or individuals of Gibralter[], Cabrini[], nor designates nor [grantees] of Divinely[,]" and "[n]one … were granted any rights,
28   permissions, and/or allowances from either" Gibralter, Cabrini, or Divinely.  *Id.* ¶¶ 30, 31.

1    *Id.* ¶¶ 11, 12.  Plaintiffs allege Defendants' infringing use of the MARK "in a manner to cause

2    consumer confusion and to deceive the public regarding the source, sponsorship, and/or affiliation

3    of the florals is unlawful and is causing irreparable harm to Plaintiffs' brand."  *Id.* ¶ 13.

4         The FAC alleges that Teleflora "controls the contents of the 'estores' on their ecommerce

5    platform utilized[,]" has "the power to supervise and monitor the infringing content and further has

6    the ability to prevent and/or stop the infringing content of the Defendants[,]" and has "a direct

7    financial interest in any order an 'estore' such as Bloomingful Flowers[] receives and/or places on

8    the Teleflora ecommerce platform either by flat fee and/or commission."  *Id.* ¶¶ 49-51.  Plaintiff

9    alleges Teleflora "knew or should have known that Bloomingful Flowers was infringing on []

10    Plaintiffs'' MARK."  *Id.* ¶ 52.

11         Plaintiffs assert nine claims against Teleflora and DMS Flowers Defendants, including

12    under the Lanham Act for (1) trademark infringement, (2) unfair competition, (3) trademark

13    dilution, (4) unfair and deceptive trade practices, and (5) common law trademark infringement and

14    unfair competition; (6) state trademark dilution and injury to business reputation; (7) violation of

15    the Anti-Cybersquatting Consumer Protection Act ("ACCPA") – Cyberpiracy; (8) vicarious

16    trademark infringement; and (9) contributory trademark infringement.  *See* (Doc. 93 at 9-20).

17         Plaintiffs seek preliminary and permanent injunctive relief barring Defendants from

18    distributing, marketing, or selling florals bearing the MARK or any words which are confusingly

19    similar to the MARK, trebled monetary damages, disgorgement of Defendants' profits from sales

20    of florals under the infringing MARK, and punitive damages, attorneys' fees, and costs.  *Id.* ¶ 14.

21    **II.**     **Governing Authority**

22         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss

23    a plaintiff's complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ.

24    P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star*

25    *Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371,

26    374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a

27    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

28

1    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean*

2    *Witter Reynolds, Inc*., 749 F.2d 530, 533-34 (9th Cir. 1984)).

3        To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient

4    factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,

5    678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the

6    claim showing that the pleader is entitled to relief).   A complaint satisfies the plausibility

7    requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the

8    defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

9    (2007).

10       When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court

11   must accept as true all allegations put forth in the complaint and construe all facts and inferences

12   in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

13   *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed

14   factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-

15   me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).  The Court is "not 'required to accept

16   as true allegations that contradict exhibits attached to the Complaint or matters properly subject to

17   judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or

18   unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d

19   1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

20   2010)).  Nor does the court "necessarily assume the truth of legal conclusions merely because they

21   are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th

22   Cir. 1981).

23   **III.    Parties' Contentions**

24       Teleflora contends the FAC's "threadbare" and conclusory allegations against it— that

25   "Teleflora 'controls' content on its platform, … has the 'power to supervise and monitor' infringing

26   content on its platform, and … somehow knew or should have known of the DMS Defendants'

27   infringement based on infringement notices Plaintiffs sent to DMS Defendants (not Teleflora)"—

28   are insufficient to form the basis of Plaintiffs' claims against them and the claims should be

1  dismissed.  (Doc. 111 at 9) (emphasis removed).  Teleflora argues that the FAC fails to specify

2  which claims and allegations refer to which particular Defendant(s), and illustrate the absurdity in

3  Plaintiffs' attempt to argue that Defendants collectively began to infringe on the MARK when DMS

4  Flowers Defendants registered the "Bloomingful" name as an entity with the Secretary of State as

5  "Teleflora did not and could not have been involved in DMS Defendants' entity registration."  *Id.*

6  Teleflora further argues that Plaintiffs' state law claims fail because, aside from failing to state a

7  claim, they are barred by the Communications Decency Act, "which immunizes providers of

8  interactive computer services (like Teleflora) from content created by third parties (like the DMS

9  Defendants)."  *Id.*

10      Plaintiffs contend the FAC sets forth detailed allegations establishing that Teleflora was not

11  a "mere passive platform provider" but that it "exercised substantial control over its own website

12  that listed, promoted, and profited from [DMS Flowers] Defendants' flower business" and "over

13  the infringing e-store/online platform" operated by DMS Flowers Defendants, that Teleflora had

14  actual or constructive knowledge of the infringement, and that Teleflora failed to mitigate or take

15  timely remedial action.  (Doc. 115 at 5).  Plaintiffs argue its claims for direct, vicarious, and

16  contributory infringement, and related state and common law claims, are sufficiently pled to survive

17  a motion to dismiss.  *Id.*  Plaintiffs further contend that the CDA "does not immunize [Teleflora]

18  for its role in materially contributing to infringing conduct."  *Id.*

19      Teleflora argues in reply that Plaintiffs' opposition merely restates the FAC's conclusory

20  allegations which are insufficient to state any claims asserted against it.  (Doc. 121 at 2).

21  **IV.    Discussion**

22      **A.    Claim 1: Trademark Infringement (15 U.S.C. § 1114(1)(a))**

23          1.    *Governing Authority*

24  "To establish a trademark infringement claim or an unfair competition claim under the

25  Lanham Act, a plaintiff must show that (1) the plaintiff has a protectable ownership interest in the

26  mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion."  *EVO*

27  *Brands, LLC v. Al Khalifa Group LLC*, 657 F. Supp. 3d 1312, 1325-26 (C.D. Cal. 2023) (citing 15

28  U.S.C. §§ 1114(1), 1125(a)); *Brooksfield Comm'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036,

1   1046 (9th Cir. 1999)).  The trademark owner "must establish a valid, protectable interest in order

2   to proceed to the second prong of the trademark infringement analysis – the likelihood of confusion

3   resulting from the defendant's alleged infringing use." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511

4   F.3d 966, 972 (9th Cir. 2007).

5       In the Ninth Circuit, courts examine eight non-exhaustive factors to determine whether a

6   likelihood of confusion exists as between two parties' marks.  *Murray v. Cable Nat'l Broad. Co.*,

7   86 F.3d 858, 860 (9th Cir. 1996).  *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 & n.11

8   (9th Cir. 1979) (identifying eight factors).  The eight factors are: (1) the strength or distinctiveness

9   of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4)

10  evidence of actual confusion; (5) marketing channels used; (6) types of goods and degrees of care

11  likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) the

12  likelihood of expansion into other markets.  *Id.* at 348.

13          2.      *Analysis*

14      Because Teleflora does not dispute that Gibralter is the registered owner of the MARK,[4] the

15  Court proceeds to the second prong of the trademark infringement analysis.  *See* (Doc. 111 at 16)

16  ("Gibralter … is the registered owner of the Mark[.]"); *Pom Wonderful LLC v. Hubbard*, 775 F.3d

17  1118, 1124 (9th Cir. 2014) ("When proof of registration is uncontested, the ownership interest

18  element of a trademark infringement claim is met.") (citing 15 U.S.C. § 1115(a)).

19

20

---

21      [4] Teleflora contends Divinely is not the owner of the MARK and lacks standing to bring a
    direct infringement claim.  (Doc. 111 at 13).  Standing under § 1114 "may exist where the licensing
22  agreement both [1] grants an exclusive license and [2] grants to the exclusive licensee a property
    interest in the trademark, or rights that amount to those of an assignee." *Upper Deck Co. v. Panini
23  Am., Inc.*, 533 F. Supp. 3d 956, 962 (S.D. Cal. 2021) (citing *Halcyon Horizons, Inc. v. Delphi
    Behavioral Health Grp., LLC*, No. 17-cv-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11,
24  2017) and other cases).  Because the FAC alleges that "Gibralter[] reaffirmed the grant of sole and
    exclusive use of the MARK to Divinely[] and its affiliated entities, if any, and/or individuals … as
25  Divinely[] designates[,]" (Doc. 93 ¶ 30), and Teleflora does not contest the validity of this
    assignment, the Court finds that Divinely has standing here to assert a trademark infringement claim
26  under § 1114.  *See Ultrapure Systems, Inc. v. Ham-Let Grp.*, 921 F. Supp. 659, 666 (N.D. Cal.
    1996) ("Ultrapure, as an exclusive licensee, does have a property interest in the trademark and
27  qualifies as an assignee or successor of the registrant. … Therefore, Ultrapure does have standing
    to enforce the [] mark against Defendants.").
28

7

1        The Court finds that the FAC fails to cognizably alleges a claim under the Lanham Act for

2    trademark infringement.  "A plaintiff suing multiple defendants 'must allege the basis of [their]

3    claim against each defendant to satisfy … Rule 8(a)(2)[.]'" *Altman v. PNC Morg.*, 850 F. Supp. 2d

4    1057, 1067–68 (E.D. Cal. 2012) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D.

5    Cal. 1988)).  "The primary purpose of Rule 8(a)(2) is to ensure the pleading gives a defendant 'fair

6    notice of what plaintiff's claim is and the grounds upon which it rests' in order to enable the

7    [defendant] to answer and prepare for trial, and to identify the nature of the case." *Segal v. Segal*,

8    No. 20-cv-1382-BAS-JLB, 2022 WL 198699, at *6 (S.D. Cal. Jan. 21, 2022) (citation and quotation

9    omitted); *see Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal.

10   2015) ("[W]hen a pleading fails 'to allege what role each Defendant played in the alleged harm,'

11   this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to

12   Plaintiffs' allegations.'") (citing *In re iPhone Application Litig.,* No. 11-MD-02250-LHK, 2011 WL

13   4403963, at *8 (N.D. Cal. Sept. 20, 2011)).  As Teleflora correctly argues, the FAC's allegations

14   fail to articulate which specific conduct of Teleflora led to the claimed harm; instead, the FAC

15   alleges generally that all "Defendants' use of the identical MARK of Plaintiffs' is likely to cause

16   confusion[.]" *See* (Doc. 93 ¶¶ 58).

17       The only material allegations in the FAC addressing Teleflora's alleged conduct are that

18   Teleflora "controls the content of the 'estores' on their ecommerce platform utilized[,]" that it "has

19   the power to supervise and monitor the infringing content and … has the ability to prevent and/or

20   stop the infringing content of the Defendants[,]", and that it "knew or should have known that

21   Bloomingful Flowers was infringing on the Plaintiffs' MARK." *Id.* ¶¶ 49-52.  But these conclusory

22   allegations fail to give Teleflora fair notice of what "use" of Plaintiffs' MARK it has made that is

23   likely to cause confusion.  *See Segal*, 2022 WL 198699, at *7 ("[I]t is insufficient that the [first

24   amended complaint] repeatedly alleges 'Defendants' collectively caused Plaintiff's copyrights

25   and trademarks to be infringed.").

26       The FAC fails to adequately allege a likelihood of confusion on the part of Teleflora.  There

27   is no allegation that Teleflora itself used the MARK in commerce.  *See Free Kick Master LLC v.*

28   *Apple Inc.*, 140 F. Supp. 3d 975, 982 (N.D. Cal. 2015) ("With regard to the Lanham Act claims,

1    the [second amended complaint] refers to 'defendants' use of the [] mark, … but alleges no facts

2    showing that [defendants] in fact 'used' the mark or that … 'use' created a likelihood of

3    confusion.").  Nor do Plaintiffs' allegations, liberally construed, in alleging Teleflora's facilitation

4    of DMS Flowers Defendants' infringement based on Teleflora's control and knowledge support a

5    claim for direct trademark infringement against Teleflora.  *See Atari Interactive, Inc. v. Redbubble,*

6    *Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021) ("[An] alleged infringer must directly use the

7    trademarks; a party that merely facilitates or assists others' use cannot be liable for direct

8    infringement."); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM (SHx), 2013 WL

9    2109963, at *14 (C.D. Cal. Mar. 8, 2013) ("Direct infringement requires that the defendant itself

10   'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows

11   third parties to use the mark.") (citing 15 U.S.C. § 1114(a)).

12   Plaintiffs' reliance (Doc. 115 at 8) on *Louis Vuitton Malletier, S.A. v. Akanoc Solutions,*

13   *Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) for the proposition that its allegations of Teleflora's control,

14   knowledge, and actions in allowing the MARK to be used on its e-stores is sufficient to establish

15   "use in commerce" and consumer confusion is unpersuasive.  As Teleflora correctly notes, *Louis*

16   *Vuitton Malletier, S.A.* involved a claim for contributory trademark infringement, not direct

17   infringement, and the Court's holding expressly was limited to contributory infringement claims.

18   *Id.* ("Plaintiffs asserting contributory trademark infringement claims must prove that defendants

19   provided their services with actual or constructive knowledge that the users of their services were

20   engaging in trademark infringement.") (citation omitted).  Therefore, the Court grants Teleflora's

21   motion to dismiss Plaintiffs' first claim for direct trademark infringement.

22   While it does not appear Plaintiffs would be able to sufficiently allege that Teleflora "used"

23   Plaintiffs' MARK to cognizably plead a direct infringement claim, the Court will adhere to the

24   general rule that leave to amend a claim that is dismissed should be freely granted where the claim's

25   deficiency could be cured.  Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,

26   806 F.2d 1393, 1401 (9th Cir. 1986).

27   ///

28   ///

9

**B.      Claim 2: Unfair Competition (15 U.S.C. § 1125(a))**

       1.     *Governing Authority*

An action under the Lanham Act for unfair competition requires a plaintiff to show the defendant's use of the same or similar mark would create a likelihood of consumer confusion. *See Murray*, 86 F.3d at 860; *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997-98 (N.D. Cal. 2014); *EVO Brands, LLC*, 657 F. Supp. 3d at 1324.

       2.     *Analysis*

Here, Plaintiffs' FAC fails to state a claim for unfair competition for the same reasons articulated above for Plaintiffs' failure to state a claim for direct trademark infringement. Accordingly, the Court grants Teleflora's motion to dismiss Plaintiffs' second claim under the Lanham Act for unfair trademark competition. As set forth above, although it is unlikely Plaintiffs would be able to allege that Teleflora "used" Plaintiffs' MARK sufficient to cognizably allege an unfair competition claim, the Court will grant leave to amend.

**C.      Claim 3: Trademark Dilution (15 U.S.C. § 1125(c))**

       1.     *Governing Authority*

To state a claim under the Lanham Act for trademark dilution, a plaintiff "must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 633 F.3d 1158, 1168 (9th Cir. 2011) (quoting *Jada Toys, Inc. v. Mattel, Inc*., 518 F.3d 628, 634 (9th Cir. 2008). "Neither federal law nor California state law requires a showing of competition or likelihood of confusion to succeed on a dilution claim." *Jada Toys*, 518 F.3d at 634.

       2.     *Analysis*

Plaintiffs fail to adequately plead that its MARK is famous.[5] "A mark qualifies as famous for the purposes of a dilution claim 'if it is widely recognized by the general consuming public of

---

[5] In contrast to an exclusive licensee's ability to bring a direct infringement claim, only the "owner" of a trademark may assert a dilution claim. *See Bravado Int'l Grp. Merchandising Servs., Inc., v. Gearlaunch, Inc*., No. CV 16-8657-MWF(CWx), 2018 WL 6017035, at *4-5 (C.D. Cal. Feb. 9, 2018) (quoting § 1125(c)). Thus, because Divinely is pleaded to be the exclusive

1    the United States as a designation of source of the goods or services of the mark's owner.'" *Motul*

2    *S.A v. USA Wholesale Lubricant, Inc*, 686 F. Supp. 3d, 900, 915 (N.D. Cal. 2023) (citing 15 U.S.C.

3    § 1125(c)(2)).  "In determining whether a mark possesses the requisite degree of recognition, the

4    court may consider all relevant factors, including the following: (i) [t]he duration, extent, and

5    geographic reach of advertising and publicity of the mark, whether advertised or publicized by the

6    owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services

7    offered under the mark; (iii) [t]he extent of actual recognition of the mark; and (iv) [w]hether the

8    mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the

9    principal register."  *Id.*  "[D]ilution protection [extends] only to those whose mark is a household

10   name."  *Id.* (citing *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015)).

11         Here, Plaintiffs allege they have promoted the MARK for over five years in both the United

12   States and internationally, which "has become a known symbol of Plaintiffs and Plaintiffs'

13   products" and that the MARK is registered.  *See* (Doc. 93 ¶¶ 10, 68-71).  Though Plaintiffs concede

14   the MARK may not be a household name (Doc. 115 at 8), they contend it is nonetheless famous in

15   the niche market of the floral industry.  However, while niche fame under limited circumstances

16   could be sufficient to satisfy the "fame" element under the original Lanham Act dilution provisions,

17   the Trademark Dilution Revision Act of 2006 "expressly repudiated" the "niche market" theory

18   and requires, instead, a showing that the famous mark is widely recognized by the general

19   consuming public of the United States. *Aegis Software, Inc. v. 22nd Dist. Ag. Assoc.*, 255 F. Supp.

20   3d 1005, 1011 (S.D. Cal. 2017) (citing *Levi Strauss*, 633 F.3d at 1166-67); *see Dahon N. Am., Inc.*

21   *v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681, at *9 (C.D. Cal. April 24, 2012)

22   ("[T]rademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel

23   cigarettes, and Barbie dolls.").  And because Plaintiffs do not offer any nonconclusory allegations

24   about the extent of the MARK's notoriety, the allegations are insufficient to plausibly allege a

25   dilution claim.  *See Arcsoft, Inc.*, 153 F. Supp. 3d at 1067 (finding conclusory allegations of a "well-

26   _____

27   licensee, not the owner, of the MARK, Plaintiffs cannot, consistent with Rule 11, now allege that
     Divinely owns the MARK.  Accordingly, Divinely may not assert a dilution claim.  *See, e.g., id.*;

28   *Love v. The Mail on Sunday*, No. CV 05-7798-ABC, 2006 WL 4046180, at *14 (C.D. Cal. Aug.
     15, 2006).

                                              11

1   known brand" that "attained widespread and favorable recognition … through the United States"

2   insufficient to sustain a plausible inference of national recognition); *Parts.com, LLC v. Yahoo! Inc*.,

3   996 F. Supp. 2d 933, 940-41 (S.D. Cal. 2013) (dismissing federal trademark dilution claim because

4   plaintiff's "allegations …are conclusory and do not provide sufficient specific facts to be

5   plausible.").  Further, and as noted above, the FAC as constructed does not articulate that Teleflora

6   directly used the MARK, and instead merely lumps Teleflora with DMS Flowers Defendants in

7   Plaintiffs' allegations of Defendants' purported infringed use.  *See Free Kick Master LLC*, 140 F.

8   Supp. 3d at 982.  The Court finds Plaintiffs' allegations here fall short of the threshold standard

9   required for a federal trademark dilution claim.

10      As with Plaintiffs' other deficiently-pleaded Lanham Act claims, the Court will extend

11   leave to amend the dilution claim.

12      **D.      State Law Claims 4, 5, and 6: Unfair and Deceptive Trade Practice, Common**

13      **Law Trademark Infringement and Unfair Competition, and Trademark**

14      **Dilution and Injury to Business Reputation**

15      1.      *Governing Authority*

16      "[T]rademark claims under California law are substantially congruent with federal claims

17   and thus lend themselves to the same analysis." *Grupo Gigante S.A. de C.V. v. Dallo & Co*., 391

18   F.3d 1088, 1100 (9th Cir. 2004) (internal quotation and citation omitted); accord *Cleary v. News

19   Corp*., 30 F.3d 1255, 1262–63 (9th Cir. 1994).  Similarly, a cause of action under California's

20   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), is "substantially congruent" to

21   a trademark infringement claim under the Lanham Act.  *Global Apogee v. Sugarfina, Inc.*, CV 18-

22   5162-RSWL-Ex, 2021 WL 4819715, at *6 (C.D. Cal. Oct. 15, 2021) (quoting *Acad. of Motion

23   Picture Arts & Scis. v. Creative House Promotions, Inc*., 944 F.2d 1446, 1457 (9th Cir. 1991)).

24   Likewise, "[a] California state law dilution claim 'is subject to same analysis as [a] federal

25   [trademark dilution] claim.'" *Films of Distinction, Inc. v. Allegro Film Prods., Inc*., 12 F. Supp. 2d

26   1068, 1078 (C.D. Cal. 1998) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th

27   Cir. 1998)); *see Arcsoft, Inc.*, 153 F. Supp. 3d at 1064-65 ("[T]he analysis is the same for a

28

1    trademark dilution claim whether under federal or California law.") (citing *Jada Toys*, 518 F.3d at

2    634).

3                    2.    *Analysis*

4         Here, because the standards of the aforementioned state law claims mirror the standards

5    required to state a claim for the analogous federal claims, Plaintiffs' state law claims for trademark

6    infringement, unfair competition, and trademark dilution fail for the same reasons as the federal

7    claims as set forth above.

8         Separately, the Court finds Plaintiffs' state law claims are barred under the Communications

9    Decency Act ("CDA").  "The CDA provides a limited form of immunity to certain Internet related

10   entities: 'No provider or user of an interactive computer service shall be treated as the publisher or

11   speaker of any information provided by another information content provider.'"  *Parts.com, LLC*,

12   996 F. Supp. 2d at 938 (citing 47 U.S.C. § 230(c)(1)).  Thus, an interactive computer service is

13   immune from liability for infringing content created by others so long as it is not also an

14   "information content provider," defined by the CDA as any person or entity that is "'responsible,

15   in whole or in part, for the creation or development of' the offending content."  *Fair Housing*

16   *Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1165 (9th Cir. 2008)

17   (quoting § 230(f)(3)).  The Ninth Circuit has recognized that the CDA extends a "broad grant of

18   immunity" to providers claims arising from third-party use of their services.  *See Perfect 10,*

19   *Inc.,* 488 F.3d at 1118, 1119 n.5; *see Jurin v. Google Inc.,* 695 F. Supp. 2d 1117, 1122 (E.D. Cal.

20   2010) ("The CDA provides complete immunity to any provider or user of an interactive computer

21   service from liability premised on information provided by another content provider.").

22        The FAC alleges that Teleflora's online platform enables third parties to sell their products

23   through "estores" on an affiliate network such that Teleflora qualifies as an "interactive computer

24   service provider" under the CDA.  *See* (Doc. 93 ¶ 23); *e.g.*, *Parts.com, LLC*, 996 F. Supp. 2d at 939

25   ("Like Google, Yahoo 'provides a space and a service and thereafter charges for its service,' which

26   'allows competitors to post their digital fliers where they might be most readily received in the

27   cyber-marketplace.' … [T]his activity was entitled to CDA immunity. … Thus, Plaintiff's state law

28   claims must fail.").

                                        13

1    Plaintiffs assert that "the CDA does not immunize an entity that materially contributes to

2    the unlawful content" and argue that Teleflora is not entitled to immunity here because it "played

3    an active role in controlling, publishing, formatting, and profiting from the infringing content."

4    (Doc. 115 at 9) (citing Doc. 93 ¶¶ 49-52, 98-102).  To the extent Plaintiffs ask the Court to find that

5    CDA immunity does not apply because Teleflora is an information content provider, the Court finds

6    that the allegations of the FAC are inadequate.  A party is not an information content provider

7    outside the ambit of CDA immunity unless it creates or develops the offending content in whole or

8    in part.  Plaintiffs' allegations establish at most that Teleflora controls, supervises, monitors, and

9    profits from the offending content – not that it created or developed that content.

10    Accordingly, the Court grants Teleflora's motion to dismiss Plaintiffs' state law claims for

11    failure to state a claim and as barred by the CDA.  Plaintiffs will be afforded an opportunity to

12    amend their complaint if they are able in good faith to remedy the noted deficiencies.

13    **E.    Claim 7: Violation of Anti-Cybersquatting Consumer Protection Act –**

14    **Cyberpiracy (15 U.S.C. § 1125(d))**

15    1.    *Governing Authority*

16    "The Anti-Cybersquatting Consumer Protection Act establishes civil liability for

17    'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a

18    domain name; (2) the domain name is identical or confusingly similar to a protected mark owned

19    by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT*

20    *Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. §

21    1125(d)(1)(A)).

22    2.    *Analysis*

23    Here, Plaintiffs fail to state a cybersquatting claim.  Plaintiffs' allegations do not establish

24    that Teleflora used, registered, or trafficked in the MARK.  "Where a defendant does not register,

25    traffic in, or use a domain name to infringe [a plaintiff's] mark, there can be no violation of the

26    [ACPA]." *Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1067 (E.D. Wash. 2015).

27    Further, Plaintiffs are unable to state a cybersquatting claim on a theory of secondary liability based

28    on its allegations that Teleflora had control and knowledge of the purported infringed use by DMS

1    Flower Defendants.  *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 550-52

2    (9th Cir. 2013) (holding the ACPA does not include a cause of action for contributory

3    cybersquatting and that "the ACPA did not incorporate principles of secondary liability.").  On this

4    basis, Plaintiffs fail to state a cybersquatting claim.

5         Because Plaintiffs may be able to cognizably plead that Teleflora, in fact, registered,

6    trafficked, or used Plaintiff's MARK, the Court will grant leave to amend.

7         **F.    Claim 8: Vicarious Trademark Infringement**

8              1.    *Governing Authority*

9         "Vicarious liability occurs where 'the defendant and the infringer have an apparent or actual

10   partnership, have authority to bind one another in transactions with third parties or exercise joint

11   ownership or control over the infringing product.'"  *Perfect 10, Inc.*, 494 F.3d at 807.  "Although

12   the Ninth Circuit has not expressly defined what constitutes sufficient control, it has found that a

13   financial or contractual relationship, without more, is not enough."  *PetConnect Rescue, Inc. v.

14   Salinas*, 656 F. Supp. 3d 1131, 1158 (S.D. Cal. 2023) (citing *Perfect 10, Inc.*, 494 F.3d at 808)

15   ("finding that a 'financial partnership' between defendants and infringing websites, where

16   defendants processed payments to those websites and collected the usual processing fees, did not

17   establish 'symbiotic' relationship or 'joint ownership or control[.]'"); *see Gibson Brands, Inc. v.

18   Viacom Int'l, Inc*., 640 Fed. Appx. 677, 678 (9th Cir. 2016) ("[T]he [licensing] agreement does not

19   reveal a relationship of control over the actual infringing activity, which would constitute evidence

20   of vicarious liability.").

21        "[F]or vicarious liability to attach, the defendant must have 'control such as to stop

22   the infringing activity.'"  *Mophie, Inc. v. Shah*, No. SACV1301321DMGJEMX, 2014 WL

23   10988339, at *4 (C.D. Cal. July 24, 2014).  The "mere ability to withdraw a financial 'carrot' does

24   not create the 'stick' of 'right and ability to control' that vicarious infringement requires."  *Salinas*,

25   656 F. Supp. 3d at 1159.  "Further, 'the shared control must extend in some way to the infringed

26   intellectual property itself.'"  *Id.* (citing *Y.Y.G.M. SA v. Redbubble, Inc*., No.

27   219CV04618RGKJPR, 2020 WL 3984528, at *9 (C.D. Cal. July 10, 2020)).

28   ///

15

1          2.      *Analysis*

2          In the FAC, Plaintiffs allege Teleflora provided an "estore" to DMS Flowers Defendants to

3    display, advertise, market, and sell their products on Teleflora's ecommerce platform; that Teleflora

4    had the power to supervise and monitor the content and infringing use of Plaintiffs' MARK on the

5    Teleflora platform; that Teleflora had the power and ability to prevent and/or stop the infringing

6    content and/or use of Plaintiffs' MARK by DMS Flowers Defendants; that Teleflora had a direct

7    financial benefit/interest in the infringing use of the MARK; and Teleflora's conduct in failing to

8    prevent the infringing use led to Teleflora's harm.  *See* (Doc. 93 ¶¶ 98-102).

9          The Court finds Plaintiffs have failed to state a claim for vicarious trademark infringement

10   against Teleflora.  Plaintiffs' allegations fall short of alleging that Teleflora has an actual or

11   apparent partnership, authority to bind DMS Flowers Defendants in transactions with third parties,

12   or exercise joint ownership or control over the allegedly infringed MARK.  *See Perfect 10, Inc.*,

13   494 F.3d at 807; *Redbubble, Inc.*, 2020 WL 3984528 at *9 (defendant's "control of the …

14   background processes … is insufficient to impose vicarious liability without some indication that

15   [defendant] exercised control over the appearance and content of the infringing products

16   themselves.").  At most, Plaintiffs' allegations demonstrate Teleflora's type of control is only

17   indirect and does not give Teleflora the right or ability to control the actual infringing activity at

18   issue, particularly the alleged infringing use of the MARK.  *See Gibson Guitar Corp. v. Viacom*

19   *Intern. Inc.*, No. CV 12-10870 DDP (AJWx), 2013 WL 2155309, at *6 (C.D. Cal. May 17, 2023)

20   ("Viacom can influence the allegedly infringing product by blocking its sale or by removing its

21   mark from the product, but this does not give Viacom the right or ability to control the actual

22   infringing activity at issue in this case, namely, the production and sale of instruments that infringe.

23   Viacom's type of control is only indirect.") (internal quotation omitted).  Other than Plaintiffs'

24   conclusory allegations of control, Plaintiffs have not shown that Teleflora has contracts or

25   agreements with DMS Flowers Defendants such that Teleflora is empowered to stop or limit them

26   infringing on the MARK.  *See Perfect 10, Inc.*, 508 F.3d at 1173 ("Perfect 10 has not shown that

27   Google has contracts with third-party websites that empower Google to stop or limit them from

28

1    reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet.").

2    Thus, Plaintiffs have failed to state a vicarious trademark infringement claim against Teleflora.

3      Because Plaintiffs may allege additional facts in an amended complaint sufficient to assert

4    a vicarious trademark infringement claim, the Court will extend leave to amend.

5      **G.**  **Claim 9: Contributory Trademark Infringement**

6        1. *Governing Authority*

7      A defendant may be held liable for contributory trademark infringement if it "(1)

8    intentionally induces another to infringe on a trademark or (2) continues to supply a product

9    knowing that the recipient is using the product to engage in trademark infringement." *Fonovisa,*

10   *Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Labs., Inc. v. Ives*

11   *Labs., Inc*., 456 U.S. 844, 854–55 (1982)); *see Perfect 10, Inc.*, 508 F.3d at 1171 ("[O]ne who, with

12   knowledge of the infringing activity, induces, causes or materially contributes to the infringing

13   conduct of another, may be held liable as a 'contributory' infringer[.]") (citing *Gershwin Publishing*

14   *Corp. v. Columbia Artist Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "Defendant must know

15   of 'specific infringing material' and fail to 'take simple measures to prevent further damage.'"

16   *Redbubble, Inc.*, 515 F. Supp. 3d at 1115 (citing *Perfect 10, Inc.*, 508 F.3d at 1171-72). The

17   "supplies a product" requirement for contributory infringement has been expanded to include

18   "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's

19   mark." *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 984 (9th Cir. 1999).

20       2. *Analysis*

21     The FAC does not allege Teleflora intentionally induced DMS Flowers Defendants to

22   perpetuate the infringement of Plaintiffs' MARK and, in opposition to dismissal, Plaintiffs do not

23   advance an inducement theory as the basis for their contributory infringement claim. *See* (Doc.

24   115 at 12). As to a knowing facilitation theory, the FAC fails to show that Teleflora knew of the

25   *specific* infringing material of DMS Flowers Defendants, as Plaintiffs allege only that Teleflora

26   knew or should have known that the DMS Flowers Defendants were generally infringing on the

27   MARK. *See* (Doc. 93 ¶¶ 111-12). Moreover, because the FAC alleges that Plaintiffs' cease and

28   desist letter was communicated only to DMS Flowers Defendants, and not Teleflora, Plaintiffs'

allegations of Teleflora's purported actual or constructive knowledge of the DMS Flower Defendants' alleged infringed use of the MARK, without more, are conclusory.  *See YZ Productions, Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 765 (N.D. Cal. 2021) ("[B]ecause Plaintiff does not allege that Defendant had knowledge of specific acts of infringement, the Court concludes that Plaintiff has not adequately alleged that Defendant 'knew of acts of direct infringement.'"); *e.g.*, *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 WL 1089267, at *3 (N.D. Cal. Mar. 21, 2016) ("Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively.").

Thus, the Court finds Plaintiffs fail to state a contributory trademark infringement claim against Teleflora.  Because Plaintiffs may allege additional facts in an amended complaint to adequately plead a contributory trademark infringement claim, the Court will grant leave to amend.

## V.   <u>Conclusion and Order</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.   Defendant Teleflora, LLC's motion to dismiss (Doc. 111) is GRANTED;

2.   Plaintiffs' First Amended Complaint (Doc. 93) is DISMISSED with leave to amend.

3.   Plaintiffs SHALL FILE **within 21 days** of entry of this order any second amended complaint ("SAC") consistent with this order.

4.   Defendant Teleflora, LLC, SHALL FILE a response to any timely filed SAC **within 14 days** from its filing.

IT IS SO ORDERED.

Dated:   **September 11, 2025**                    _____

UNITED STATES MAGISTRATE JUDGE