UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GIBRALTER, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DMS FLOWERS, LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-00174-CDB<br><br>ORDER GRANTING DEFENDANT TELEFLORA, LLC'S MOTION TO DISMISS ALL CLAIMS AGAINST IT IN THE SECOND AMENDED COMPLAINT WITH PREJUDICE<br><br>(Doc. 141) |

Pending before the Court[1] is the motion of Defendant Teleflora, LLC ("Teleflora") to dismiss the second amended complaint ("SAC") of Plaintiffs Gibralter, LLC ("Gibralter"), and Divinely, Inc. ("Divinely") (collectively, "Plaintiffs"), filed on October 17, 2025. (Doc. 141). On October 31, 2025, Plaintiffs filed a response to the motion to dismiss and declaration of counsel for Plaintiffs in support thereof. (Docs. 145, 146). On November 7, 2025, Teleflora filed a reply. (Doc. 147). Following review of the parties' filings made in connection with the motion, the Court deemed the motion suitable for disposition without hearing and oral argument. (Doc. 148) (citing Local Rule 230(g)). For the reasons set forth herein, the Court will grant Teleflora's motion to dismiss the SAC with prejudice.

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on May 22, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 105).

## I.    Relevant Background

### A.    Procedural History

On February 6, 2024, Plaintiffs initiated this action with the filing of a complaint against Defendants Daniel Andrade ("Andrade"), Samantha Andrade, DMS Flowers, LLC, and Maria Pantoja (collectively, the "DMS Flowers Defendants").[2]  (Doc. 1).  On March 27, 2025, Plaintiffs filed the first amended complaint. (Doc. 93).  On September 11, 2025, the Court granted Teleflora's motion to dismiss Plaintiffs' first amended complaint with leave to amend.  (Doc. 132).  On September 18, 2025, the Court granted Teleflora's unopposed motion to dismiss the DMS Flowers Defendants' second amended cross-complaint with prejudice.  (Doc. 135).

On October 2, 2025, Plaintiffs filed the operative, second amended complaint ("SAC") against all Defendants.  (Doc. 138).  On October 17, 2025, the DMS Flowers Defendants filed an answer to the SAC.  (Doc. 143).

### B.    Factual Background of Plaintiffs' SAC[3]

According to allegations contained in the SAC, DMS Flowers Defendants Daniel Andrade, Samantha Andrade, and Maria Pantoja are owners, business partners, shareholders, members, managers, or other authority figures of DMS Flowers, LLC, the successor in interest to Bloomingful Flowers, which continues to sell florals under the tradename "Bloomingful Flowers" (www.bloomingfulflower.com) in direct competition to Divinely. (Doc. 138 ¶¶ 16-20).  Teleflora is a limited liability company that "is in the business of selling florals from various vendors throughout the United States and Canada across its online platform" and provides "estores" on their affiliate network to individual and/or corporate flower shops.  *Id.* ¶ 21.

Plaintiffs allege that this case arises from Defendants' (including DMS Flowers Defendants and Teleflora) infringement and continued use of Gibralter's registered trademark

---

[2] As the parties are familiar with the procedural history of this case, the Court incorporates the procedural history more fulsomely articulated in its previous order.  *See* (Doc. 135 at 2).

[3] Citation to pages of filings herein correspond to the CM/ECF-designated pagination.

"BLOOMINGFUL" ("Mark").[4]  *Id.* ¶ 7; *see id.* ¶¶ 25-32, 40-57; *see id.* at 41-45, Ex. 4.  Plaintiffs allege the MARK is "covered by an incontestable federal trademark Registration" and is "well known among floral wholesalers and consumers[.]"  *Id.* ¶¶ 38, 39.  Plaintiffs allege Defendants, as direct competitors of Plaintiffs, began using the identical MARK for their floral business as early as May 2023.  *Id.* ¶¶ 40-44.  Plaintiffs allege Defendants' infringing use of the MARK "in a manner to cause consumer confusion and to deceive the public regarding the source, sponsorship, and/or affiliation of the floral products" is "unlawful and is causing irreparable harm to Plaintiffs' brand."  *Id.* ¶ 46.

The FAC alleges that Teleflora "actively recruits thousands of independent florists[] such as Bloomingful Flowers[] to become floral partners with Teleflora."  *Id.* ¶ 61.  Plaintiff alleges that Teleflora "monitors and inspects the quality of Teleflora's floral partner network[,]" that it "actively and routinely publishes, codes, and updates substantial content and placement of content on the floral partner's estore[,]" and that "[m]uch, if not all, [of the] content is exclusively controlled by Teleflora and is not optional nor editable by the Teleflora florist partner."  *Id.* ¶¶ 64-67.  Plaintiffs allege that Teleflora has "a direct financial interest in any order an 'estore[]' such as Bloomingful Flowers[] receives and/or places on the Teleflora ecommerce/wire services platform."  *Id.* ¶ 68.  Plaintiffs allege Teleflora "knew or should have known of Plaintiffs' right in the MARK for floral sales but intentionally, recklessly, and/or negligently adopted and used and/or continued to adopt and use the MARK with the knowledge that such use would mislead and deceive customers into believing that Defendant DMS's florals were produced, authorized, licensed by Plaintiffs and/or that Defendants DMS's florals originated from Plaintiffs."  *Id.* ¶ 49.  Plaintiffs allege Teleflora

---

[4] Plaintiffs allege that on August 14, 2018, Divinely registered the MARK on the principal register #5540108 before it was assigned to Cabrini, LLC ("Cabrini"), on November 10, 2021. (Doc. 138 ¶¶ 26, 27); *see id.* at 37-38, Exs. 1-2.  Cabrini granted Divinely and its designated affiliates the sole and exclusive right to use the MARK.  *Id.* ¶ 28.  On July 15, 2023, Cabrini thereafter assigned the MARK to Gibralter, which reaffirmed the grant of sole and exclusive use of the MARK to Divinely.  *Id.* ¶¶ 29, 30; *see id.* at 39-40, Ex. 3.  On September 1, 2023, Gibralter filed the combined Declaration of Use and Incontestability application under Sections 8 and 15, which was accepted and approved by the United States Patent and Trademark Office.  *Id.* ¶ 32. Plaintiffs allege that "[n]one of the Defendants were granted any rights, permissions, and/or allowances from [either]" Gibralter, Cabrini, or Divinely.  *Id.* ¶¶ 31.

"intentionally, knowingly, willfully, recklessly and/or negligently used and contributed to Defendant DMS's use of the [] MARK of Plaintiffs." *Id.* ¶ 57.

Plaintiffs assert six claims against Teleflora, including under the Lanham Act for: (1) unfair competition (Second Claim); (2) unfair competition (Fourth Claim); (3) unfair and deceptive trade practices (Sixth Claim); (4) common law trademark infringement and unfair competition (Eighth Claim); (5) violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA") – Cyberpiracy (Tenth Claim); and (6) contributory trademark infringement (Eleventh Claim). *See id.* at 18-33).

Plaintiffs seek preliminary and permanent injunctive relief barring Defendants from advertising, marketing, promoting, offering for sale, distributing, or selling florals under the infringing MARK, using the infringing MARK, or using any words which are confusingly similar to the MARK. *See id.* at 33-35. Plaintiffs further seek damages, trebled monetary damages, punitive damages, and costs. *Id.*

## II.    **Governing Authority**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the

defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Nor does the court "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1162 n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id.* In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002). "A court may treat such a document as 'part of the complaint, and thus may assume

5

that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Hamilton*, 746 F. Supp.2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### III.    Parties' Contentions

Teleflora moves to dismiss with prejudice each claim alleged against it in Plaintiffs' SAC. (Doc. 141 at 2). Teleflora asserts that the federal unfair competition claims fail to adequately allege Teleflora used the MARK in commerce and that such use created a likelihood of confusion, and the claims are likewise deficient for the same reasons the Court dismissed the virtually identical claims in the FAC. *Id.* Teleflora contends the state law claims for unfair and deceptive trade practices and for common law trademark infringement and unfair competition are subject to dismissal as barred by the Communications Decency Act ("CDA") and for the same reasons these claims were dismissed from the FAC. *Id.* Teleflora argues Plaintiffs fail to state a claim for cybersquatting because the SAC does not adequately allege Teleflora acted in bad faith and that Teleflora used, registered, or trafficked in the allegedly infringing domain name. *Id.* Teleflora also argues the contributory trademark infringement claim fails because Plaintiffs fail to adequately allege intentional inducement, and that Teleflora knew of specific infringing material. *Id.*

Plaintiffs contend that they have sufficiently alleged facts to support the claims of the SAC against Teleflora, or in the alternative, for further leave to amend any deficient claims. (Doc. 145 at 1-2, 11). Plaintiffs argue that Teleflora did use, create, develop, modify, and publish the infringing content based on its allegations that Teleflora entered into active "partnership" agreements with third-party florists and that Teleflora relies upon these partners for its business. *Id.* at 3. Plaintiffs contend that the Second Claim of their SAC is for federal trademark infringement under 15 U.S.C. § 1114(1)(a) despite what is articulated in the SAC. *Id.* at 4. Plaintiffs state that its claims for federal unfair competition and state law claims are "congruent and subject to the same analysis" as the corresponding federal claims. *Id.* at 5-6. Plaintiffs argue that Defendants are not entitled to immunity under the CDA because they do not deny that they created or developed the content on DMS Flowers Defendants' online store, and Plaintiffs assert that Teleflora's partnership program in "essence" supports Teleflora's involvement to the creation, modification, and development of the online content. *Id.* at 6. As to cybersquatting, Plaintiffs contend that Teleflora

acted in bad faith and that it took any and all actions with the intent to profit. *Id.* at 10. Lastly, Plaintiffs argue that Teleflora turned a willful blind eye to trademark infringement, failed to monitor, inspect, suspend, or terminate the domain hosting and failed to terminate the creation of content for DMS Flowers Defendants, thereby contributing to Plaintiffs' harm. *Id.* at 11.

In reply, Teleflora contends that because Plaintiffs' SAC contains the same deficiencies identified in the Court's dismissing Plaintiffs' FAC, the Court should dismiss the SAC's claims against Teleflora with prejudice. (Doc. 147 at 1). Teleflora argues that Plaintiffs fail to allege Teleflora directly "used" the MARK in commerce and that such use would create a likelihood of consumer confusion such that they are unable to state a claim for federal unfair competition, the state law claims, or cybersquatting. *Id.* at 2. Teleflora contends that Plaintiffs' allegations of consumer confusion are likewise deficient as Plaintiffs do not allege any connection between an individual florist's advantage from participating in Teleflora's network and a likelihood of consumer confusion arising from Teleflora's alleged use of the MARK. *Id.* at 3. Teleflora argues that Plaintiffs allege two claims for federal unfair competition in the SAC, with the Fourth Claim appearing identical to the dismissed Second Claim in the FAC, and regardless of whether Plaintiffs intended to assert a federal trademark infringement claim under 15 U.S.C. § 1114(1)(a), the claim would fail for the same reasons as found in the FAC. *Id.* at 4. Teleflora argues that the state law claims fail for the same reason as the federal unfair competition claim and because the claims are barred by the CDA as found in the Court's order dismissing the FAC. *Id.* at 5. To the extent Plaintiff relies on its reference to Teleflora's partnership program, Teleflora contends such reliance fails to show that Teleflora created or developed content to state the state law claims. *Id.* at 5-6. Teleflora contends that Plaintiffs cannot adequately allege bad faith in connection with the cybersquatting claim. *Id.* at 8-9. Teleflora asserts that the contributory infringement claim fails to allege that Teleflora specifically knew of the alleged infringement or intentionally induced DMS Flowers Defendants' infringement. *Id.* at 9-10.

**IV.   Discussion**

As a preliminary matter, the Court finds that it may not consider either the declaration of counsel for Plaintiffs or the exhibits attached thereto filed "in support of" Plaintiffs' opposition to

the motion to dismiss. (Doc. 146). The two exhibits consist of what counsel declares to be a "copy of the myTeleflora 'Welcome to eFlorist eMarketing'" and a "copy of the Teleflora eStore page source [code]." *Id.* Because neither of these documents is attached to or referenced in the SAC and Plaintiffs do not request or demonstrate that the documents may be amenable to judicial notice, the documents may not be considered by the Court in ruling on a Rule 12(b)(6) motion. *Cf. Branch*, 14 F.3d at 454 (9th Cir. 1994).

### A.    Claims 2 and 4: Unfair Competition (15 U.S.C. § 1125(a))

#### 1.    *Governing Authority*

"To establish a trademark infringement claim or an unfair competition claim under the Lanham Act, a plaintiff must show that (1) the plaintiff has a protectable ownership interest in the mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion." *EVO Brands, LLC v. Al Khalifa Group LLC*, 657 F. Supp. 3d 1312, 1325-26 (C.D. Cal. 2023) (citing 15 U.S.C. §§ 1114(1), 1125(a)); *Brooksfield Comm'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999)); *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997-98 (N.D. Cal. 2014). The trademark owner "must establish a valid, protectable interest in order to proceed to the second prong of the trademark infringement analysis – the likelihood of confusion resulting from the defendant's alleged infringing use." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 972 (9th Cir. 2007).

In the Ninth Circuit, courts examine eight non-exhaustive factors to determine whether a likelihood of confusion exists as between two parties' marks. *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996). *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 & n.11 (9th Cir. 1979) (identifying eight factors). The eight factors are: (1) the strength or distinctiveness of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods and degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) the likelihood of expansion into other markets. *Id.* at 348.

///

///

2.    *Analysis – Fourth Claim for Unfair Competition*

In the Court's order dismissing all claims in the FAC asserted against Teleflora, the Court granted leave to amend the unfair competition claim to the extent Plaintiffs can sufficiently allege that Teleflora "used" Plaintiffs' MARK to cognizably state an unfair competition claim. *See* (Doc. 132 at 10).

Here, as Teleflora correctly notes, Plaintiffs' fourth claim in the SAC, titled "Federal Unfair Competition" pursuant to 15 U.S.C. § 1125(a) against Teleflora (*see* Doc. 138 at 22-23), is pled essentially identical to the second claim in the FAC (*see* Doc. 98 at 10-11). *See* (Doc. 141 at 4, n. 1). Because Plaintiffs do not cure the deficiencies identified from the Court's previous order on the same claim in failing to sufficiently allege that Teleflora "used" Plaintiffs' MARK to state an unfair competition claim, and do not provide any meaningful argument to show otherwise, Plaintiffs again fail to state a claim for unfair competition. The Court will grant Teleflora's motion to dismiss this claim. Because any further amendment of this claim appears futile, the claim will be dismissed with prejudice. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citing *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990)).

3.    *Analysis – Second Claim for Unfair Competition or Trademark Infringement*

Although Plaintiffs' second claim in the SAC is likewise titled "Federal Unfair Competition" pursuant to § 1125(a) against Teleflora, the claim is pled differently than the deficient fourth claim for relief. *See* (Doc. 138 at 18-21). In opposing dismissal, Plaintiffs argue that "[c]ontrary to [] Teleflora's contention, the second claim in the SAC is for federal trademark infringement under 15 U.S.C. § 1114(1)(a)." (Doc. 145 at 4). Plaintiffs have not filed any notice of errata regarding the erroneously pled claim, have not moved to amend the SAC to correct the error, and have made no indication of their intent to remedy or inform the Court of the error until Teleflora moved to dismiss the SAC. In any event, because the elements for trademark infringement under § 1114(1)(a) rely on the same elements as a claim for unfair competition under

§ 1125(a), the Court's analysis of the claim remains the same. *See Murray*, 86 F.3d at 860; *Pinterest Inc.*, 15 F. Supp. 3d at 997-98; *EVO Brands, LLC*, 657 F. Supp. 3d at 1324.

Because Teleflora does not dispute that Gibralter is the registered owner of the MARK, the Court proceeds to the second prong of the trademark infringement/unfair competition analysis. *See generally* (Doc. 141); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ("When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met.") (citing 15 U.S.C. § 1115(a)).

Similar to its reasoning and finding that the trademark infringement claim advanced in the FAC was not cognizable, the Court finds the SAC fails to cognizably allege a claim under the Lanham Act for either trademark infringement or unfair competition against Teleflora. Specifically, the Court previously found that the FAC's allegations—that Teleflora controlled the content of the estores, has the power to supervise and monitor infringing content, has the ability to prevent or stop the infringing content of the DMS Flowers Defendants, and that Teleflora knew or should have known that Bloomingful Flowers was infringing on the MARK, *see* (Doc. 132 at 8)—were conclusory and failed to give Teleflora fair notice of what "use" of Plaintiffs' MARK Teleflora has made that is likely to cause confusion. The FAC failed to adequately allege a likelihood of confusion on the part of Teleflora and failed to include any allegation that Teleflora itself *used* the MARK in commerce. *Id.* The Court further found that, even liberally construing Plaintiffs' allegations of Teleflora's facilitation of DMS Flower Defendants' infringement based on Teleflora's control and knowledge, these allegations fail to support a claim for trademark infringement against Teleflora. *Id.* at 9.

Plaintiffs' SAC fails to remedy these deficiencies. Plaintiffs allege that Teleflora "used the identical MARK of Plaintiffs to sell flowers" and purport to show "use" by alleging that Teleflora "prominently used/displayed the MARK … on [DMS Flowers Defendants'] estore and then [] Teleflora drove traffic to and drove floral sales to [the estore], from which [] Teleflora profited from commission on each sale." (Doc. 138 ¶¶ 99-100). Plaintiffs allege further that Teleflora's development and operation of its online partnership scheme constitutes "use" in the "name, identity, local and physical address of their local florist partners" to drive sales. *Id.* ¶¶ 101, 102. Plaintiffs

also allege that Teleflora "used" the MARK by: "publishing Bloomingful Flowers[]" in its directory; "by way of using/incorporating the name, identify [sic] and address of Bloomingful Flowers[]"; "for the same goods and using the same, similar, and/or overlapping marketing channels"; and that Teleflora's use of the MARK "is likely to cause confusion[.]" *Id.* ¶¶ 103-109.

Even accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, they are insufficient to establish that Teleflora directly used the MARK or that such use is likely to cause confusion. At most, the allegations illustrate Teleflora's role in *facilitating* use of the MARK through its online platform. Therefore, Plaintiffs again fail to show that Teleflora directly used the MARK such that they are unable to support a claim for trademark infringement or unfair competition against Teleflora. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021) ("[An] alleged infringer must directly use the trademarks; a party that merely facilitates or assists others' use cannot be liable for direct infringement."); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM (SHx), 2013 WL 2109963, at \*14 (C.D. Cal. Mar. 8, 2013) ("Direct infringement requires that the defendant itself 'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark.") (citing 15 U.S.C. § 1114(a)); *see Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 982 (N.D. Cal. 2015) ("With regard to the Lanham Act claims, the [second amended complaint] refers to 'defendants' use of the [] mark, … but alleges no facts showing that [defendants] in fact 'used' the mark or that … 'use' created a likelihood of confusion.").

Therefore, the Court will grant Teleflora's motion to dismiss the Second Claim of Plaintiffs' SAC. Because it appears the Second Claim cannot be saved by further amendment despite Plaintiffs being afforded an earlier opportunity to remedy the deficient claim, the claim will be dismissed with prejudice. *See Doe*, 58 F.3d at 497.

**B.      State Law Claims 6 and 8: Unfair and Deceptive Trade Practices, Common Law Trademark Infringement, and Unfair Competition**

1.      *Governing Authority*

"[T]rademark claims under California law are substantially congruent with federal claims and thus lend themselves to the same analysis." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391

F.3d 1088, 1100 (9th Cir. 2004) (internal quotation and citation omitted); accord *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994).  Similarly, a cause of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), is "substantially congruent" to a trademark infringement claim under the Lanham Act.  *Global Apogee v. Sugarfina, Inc.*, CV 18-5162-RSWL-Ex, 2021 WL 4819715, at *6 (C.D. Cal. Oct. 15, 2021) (quoting *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)).

2.    *Analysis*

Because the standards for the state law claims pleaded in the SAC for trademark infringement, unfair competition, and the California UCL mirror the standards required to state a claim for the analogous federal claims—which Plaintiffs concede are "congruent and subject to the same analysis as the corresponding federal law claims" (*see* Doc. 145 at 6)—Plaintiffs' state law claims fail for the same reasons as the federal claims as set forth above.  *See* (Doc. 132 at 13).

And just as the Court found in dismissing Plaintiffs' state law claims from the FAC for the separate reason that the claims are barred under the Communications Decency Act ("CDA"), so, too, with the claims pleaded in the SAC.  Thus, the CDA "provides a limited form of immunity to certain Internet related entities: 'No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.'"  *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 938 (S.D. Cal. 2013) (citing 47 U.S.C. § 230(c)(1)).  Accordingly, an interactive computer service is immune from liability for infringing content created by others so long as it is not also an "information content provider," defined by the CDA as any person or entity that is "'responsible, in whole or in part, for the creation or development of' the offending content."  *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1165 (9th Cir. 2008) (quoting § 230(f)(3)).  The Ninth Circuit has recognized that the CDA extends a "broad grant of immunity" to providers claims arising from third-party use of their services.  *See Perfect 10, Inc.*, 488 F.3d at 1118, 1119 n.5; *see Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122 (E.D. Cal. 2010) ("The CDA provides complete immunity to any provider or user of an interactive computer service from liability premised on information provided by another content provider.").

The SAC alleges that the CDA does not bar Plaintiffs' claims against Teleflora because Teleflora "actively, routinely, frequently, and aggressively creates, publishes, codes, and/or updates substantial content and placement of content on the floral partner's estore[,] *i.e.*, Bloomingful Flowers, and that such content includes the partner's business name, address, and various content involving that business and that business's floral products. *See* (Doc. 138 ¶ 134). However, these conclusory allegations fail to show that Teleflora itself created or developed the offending content in whole or in part. At most, the allegations suggest that Teleflora operates the online platform that enables third party floral partners to sell their products through its online partnership program. In alleging that Teleflora "publishes" each floral partner's business information, promotes these businesses, "monitors and inspects" the partnership network, and "actively and routinely publishes, codes, and updates substantial content and placement of content on the floral partner's estore[s]," *id.* ¶¶ 64-67, Plaintiffs show that Teleflora operates akin to an "interactive computer service provider" under the CDA rather than a party that *creates* or *develops* infringing content outside the ambit of the CDA. *Parts.com, LLC*, 996 F. Supp. 2d at 939 ("Like Google, Yahoo 'provides a space and a service and thereafter charges for its service,' which 'allows competitors to post their digital fliers where they might be most readily received in the cyber-marketplace.' … [T]his activity was entitled to CDA immunity. … Thus, Plaintiff's state law claims must fail."); *e.g.*, *Goddard v. Google, Inc*., 640 F .Supp. 2d 1193, 1196 (N.D.Cal.2009) ("a website operator does not become liable as an 'information content provider' merely by 'augmenting the content [of online material] generally.'") (quoting *Roommates.com,* 521 F.3d at 1167-68).

Accordingly, the Court will grant Teleflora's motion to dismiss Plaintiffs' state law claims for failure to state a claim and as barred by the CDA. Because Plaintiffs are unable to remedy these deficiencies, amendment is futile, and the claims will be dismissed with prejudice. *Doe*, 58 F.3d at 497.

///

///

///

///

13

**C.    Claim 10: Violation of Anti-Cybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d))**

### 1.    *Governing Authority*

"The Anti-Cybersquatting Consumer Protection Act establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)); *see Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 549 n.3 (9th Cir. 2013) ("Cybersquatting can be understood as registering a domain name associated with a protected trademark either to ransom the domain name to the mark holder or to divert business from the mark holder") (citing *inter alia Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005)).

### 2.    *Analysis*

Here, Plaintiffs again fail to state a cybersquatting claim. As detailed above, Plaintiffs fail to show that Teleflora used the MARK. The SAC's allegation that DMS Flowers Defendants transferred the "bloomingfulflower.com" internet domain to Teleflora as part of a hosting/content/marketing solutions package for its e-store, and that Teleflora then included the domain "in their aggressive coding, advertising, and SEO'ing" (*e.g.*, search engine optimization) of the e-store, does not amount to "use" of the domain names. *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 866 (N.D. Cal. 2012), *aff'd* 737 F.3d 546 (9th Cir. 2013) ("Domain name forwarding is a standard service that has been provided by … virtually all registrars" and does not amount to a "use"). Further, under the ACPA, "[o]nly the domain name registrant or the registrant's authorized licensee can 'use' a domain name for purposes of the [Act]." *Id.* (citations omitted). Plaintiffs do not allege that Teleflora is an authorized licensee of DMS Flowers Defendants as domain holders of contested domain. *Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1067 (E.D. Wash. 2015) ("Where a defendant does not register, traffic in, or use a domain name to infringe [a plaintiff's] mark, there can be no violation of the [ACPA].").

Additionally, the SAC does not allege, nor do Plaintiffs sufficiently show, that Teleflora acted in bad faith in its purported use of the contested domain name.  Therefore, Plaintiffs fail to state a claim under the ACPA and , accordingly, the cybersquatting claim will be dismissed.  Because it appears Plaintiffs are unable to remedy this claim but further amendment, the Court will dismiss this claim with prejudice.  *Doe*, 58 F.3d at 497.

### D.    Claim 11: Contributory Trademark Infringement

#### 1.    *Governing Authority*

A defendant may be held liable for contributory trademark infringement if it "(1) intentionally induces another to infringe on a trademark or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854–55 (1982)); *see Perfect 10, Inc.*, 508 F.3d at 1171 ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer[.]") (citing *Gershwin Publishing Corp. v. Columbia Artist Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  "Defendant must know of 'specific infringing material' and fail to 'take simple measures to prevent further damage.'" *Redbubble, Inc.*, 515 F. Supp. 3d at 1115 (citing *Perfect 10, Inc.*, 508 F.3d at 1171-72).  The "supplies a product" requirement for contributory infringement has been expanded to include "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).

#### 2.    *Analysis*

In repleading the contributory trademark infringement claim dismissed from the FAC, Plaintiffs again fail to pleads facts from which a reasonable inference may be drawn that Teleflora knew of the *specific* infringing material of DMS Flowers Defendants, as Plaintiffs allege only in general and conclusory fashion that Teleflora knew or should have known that DMS Flowers Defendants were generally infringing on Plaintiffs' MARK. *See* (Doc. 138 ¶¶ 171-172).  Moreover, because the SAC alleges that Plaintiffs' cease and desist letter was communicated only to DMS Flowers Defendants, and not Teleflora, *see id.* ¶¶ 86-87, Plaintiffs' unsupported allegations of

Teleflora's purported actual or constructive knowledge of the DMS Flower Defendants' alleged infringed use of the MARK, without more, are inadequate. *See YZ Productions, Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 765 (N.D. Cal. 2021) ("[B]ecause Plaintiff does not allege that Defendant had knowledge of specific acts of infringement, the Court concludes that Plaintiff has not adequately alleged that Defendant 'knew of acts of direct infringement.'"); *e.g.*, *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 WL 1089267, at *3 (N.D. Cal. Mar. 21, 2016) ("Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively.").

Thus, the Court finds Plaintiffs fail to state a contributory trademark infringement claim against Teleflora. Because Plaintiffs' claim suffers from the same deficiencies noted in the Court's order dismissing this claim from the FAC, further amendment appears futile, and accordingly, the claim will be dismissed with prejudice. *Doe*, 58 F.3d at 497.

**V.    Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant Teleflora, LLC's motion to dismiss the claims asserted against it in Plaintiffs' second amended complaint (Doc. 141) is GRANTED;

2. Claims 2, 4, 6, 8, 10, and 11 asserted against Teleflora in Plaintiffs' second amended complaint (Doc. 138) are DISMISSED with prejudice; and

3. The Clerk of the Court is DIRECTED to dismiss Defendant/Cross-Defendant Teleflora, LLC from this action and update the docket accordingly.

IT IS SO ORDERED.

Dated:    **January 26, 2026**

UNITED STATES MAGISTRATE JUDGE

16